CARTWRIGHT, Appellee, et al.,

v.

The MARYLAND INS. GROUP, Appellant.

[Cite as *Cartwright v. The Maryland Ins. Group* (1995), 101 Ohio App.3d 439.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16968.

Decided July 5, 1995.

*Susan K. Pritchard,* for appellee.

*Kurt R. Weitendorf,* for appellant.

REECE, Judge.

Appellant, The Maryland Insurance Group ("Maryland Insurance"), appeals the trial court's entry of summary judgment, finding that the appellee, Earl Cartwright, is entitled to underinsured motorist coverage. We affirm.

On February 13, 1993, Cartwright was struck and injured by an insured motorist. As a result of his injuries, which included an above-the-knee amputation, Cartwright received the policy limit, $25,000, from the motorist's liability insurance. Cartwright also received the policy limit, $100,000, from an underinsured motorist policy in which he was the named insured.

At the time of the accident, Cartwright resided with his niece, Barbara Cartwright, who was the named insured on an automobile insurance policy with Maryland Insurance. Under the terms of the Maryland Insurance policy, Cartwright was a "family member" of his niece and, therefore, covered by his niece's underinsured motorist coverage, which had a single policy limit of $300,000 per accident. Because he alleged that his damages greatly exceeded the $125,000 he recovered from the other two insurers, Cartwright demanded that Maryland Insurance pay him the full $300,000 policy limit under his niece's underinsured motorist coverage.

Maryland Insurance denied coverage on the basis of anti-stacking language in the policy, and Cartwright instituted this declaratory judgment action on May 4, 1994. Both parties moved for summary judgment. On September 1, 1994, the trial court entered summary judgment in Cartwright's favor, finding that pursuant to *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, "the full $300,000 in policy limits [is] available" under the underinsured motorist coverage. Maryland Insurance appeals, claiming in its single assignment of error that the trial court erred in granting Cartwright summary judgment.

In its motion for summary judgment, Maryland Insurance claimed that the anti-stacking language in its policy was a valid *intra*family stacking clause permissible under paragraph two of the syllabus in *Savoie*. Maryland Insurance did not raise any other issues of law in seeking summary judgment. The trial court found that Maryland Insurance's anti-stacking language was similar to an *inter*family stacking clause and contrary to public policy under *Savoie*. 67 Ohio St.3d at 505–508, 620 N.E.2d at 813–815. On appeal, Maryland Insurance has abandoned its *intra*family stacking argument and instead argues that, in light of the October 20, 1994 amendment to R.C. 3937.18, *Savoie* no longer controls disposition of this appeal. In the interest of justice and judicial economy, we will address the merits of Maryland Insurance's argument even though the argument obviously was not raised in the trial court because R.C. 3937.18 was amended seven weeks *after* the trial court's entry of summary judgment.

In amending R.C. 3937.18, the General Assembly indicated in three uncodified sections of the amendment that its intent was "to supersede the effect of the holding" in *Savoie* relative to setoffs and stacking. Sections 7, 8, and 9, Am.Sub.S.B. No. 20. On the basis of this legislative pronouncement, Maryland Insurance contends that *Savoie* was "never the law in Ohio."

Maryland Insurance first asserts that "the law in effect at the time a contract of insurance is issued or renewed becomes a part of the policy and is applicable as though fully written into it." See, generally, *Benson v. Rosler* (1985), 19 Ohio St.3d 41, 19 OBR 35, 482 N.E.2d 599. Maryland Insurance extrapolates that since the insurance contract with Cartwright's niece was renewed prior to *Savoie*, the pre-*Savoie* case law that was in effect at the time of renewal is applicable as if fully written into the insurance contract. In particular, Maryland Insurance cites *Hower v. Motorists Mut. Ins. Co.* (1992), 65 Ohio St.3d 442, 605 N.E.2d 15, and *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 10 OBR 497, 462 N.E.2d 403, as the "law" written into the policy with Cartwright's niece. While we agree with Maryland Insurance that the *statutory* law in effect at the time of renewal becomes part of the policy, we do not agree that the same rule applies to *case* law.

First, according to Maryland Insurance's brief, the policy was last renewed on August 24, 1992. *Hower*, however, was not decided until December 11, 1992, more than three months after the renewal date. *Hower*, therefore, was not the case law in effect at the time of renewal. Furthermore, even if the holdings in *Hower* reflect the prevailing view of the Supreme Court at the time of renewal (see *Karabin* ), Maryland Insurance's argument ignores the general rule that "a decision of a court of supreme jurisdiction overruling a former decision is retrospective in operation, and the effect is not that the former law was bad law, but that it was never the law." *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St.

209, 210, 57 O.O. 411, 129 N.E.2d 467. Since the Supreme Court expressly overruled *Hower* and *Karabin* in paragraph two of the syllabus of *Savoie*, those cases were never the law and could not be part of the written insurance contract. In so holding, we note that an exception exists to the general rule of retroactivity if a party has acquired a vested right under a prior judicial decision. *Peerless*, 164 Ohio St. at 210, 57 O.O. at 411, 129 N.E.2d at 468; *King v. Safeco Ins. Co.* (1990), 66 Ohio App.3d 157, 161–163, 583 N.E.2d 1051, 1054–1055. That exception, however, does not apply in this case.

The Supreme Court has long held that "[n]o one has a vested right to a particular remedy." *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 100, 566 N.E.2d 154,· 162 (Holmes, J., concurring in part and dissenting in part), citing *State ex rel. Michaels v. Morse* (1956), 165 Ohio St. 599, 605, 60 O.O. 531, 534, 138 N.E.2d 660, 664–665, and *State v. Barlow* (1904), 70 Ohio St. 363, 374, 71 N.E. 726, 728. In regard to the uninsured/underinsured motorist statute, the Supreme Court has determined that R.C. 3937.18 is "remedial legislation." *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 440, citing *Stanton v. Nationwide Mut. Ins. Co.* (1993), 68 Ohio St.3d 111, 113, 623 N.E.2d 1197, 1199. Thus, Maryland Insurance could not have acquired a vested right under *Hower* or *Karabin* because those cases involved the interpretation of remedial legislation and did not establish any substantive rights in which Maryland Insurance could claim a vested interest. Compare *Nationwide Ins. Co. v. Tobler* (1992), 80 Ohio App.3d 560, 568–569, 609 N.E.2d 1318, 1323–1324; *Weeton v. Pradist Satayathum, M.D., Inc.* (1984), 21 Ohio App.3d 82, 83–84, 21 OBR 87, 87–89, 486 N.E.2d 246, 246–248. As a result, Maryland Insurance does not have a vested right under any prior judicial decision which would bar retroactive application of *Savoie*.

■ Maryland Insurance next contends that by expressly superseding *Savoie* in the amendments to R.C. 3937.18, "[t]he legislature has made clear that *Savoie* incorrectly interpreted the statute and was, therefore, never the law in Ohio." Maryland Insurance appears to be arguing that the legislature's decision to supersede *Savoie* should be given retroactive operation.

■ Pursuant to Section 32, Article II of the Ohio Constitution, the General Assembly is "expressly prohibited from exercising any judicial power which is not expressly conferred by the constitution." *Bartlett v. State* (1905), 73 Ohio St. 54, 58, 75 N.E. 939, 941. Thus, while the General Assembly may, in appropriate circumstances, supersede the prospective application of a Supreme Court decision through its general power to make legislative changes, it may not exercise judicial power and specifically "annul, reverse or modify" a holding of the Supreme Court already rendered. *Id.* We believe this fundamental separation-of-powers limitation means that the General Assembly, unlike the Supreme Court, may not

declare that a specific judicial decision was never the law. Rather, if the General Assembly intends to give retroactive force to a rule of law contrary to a Supreme Court decision, it must enact general legislation containing that rule of law and expressly declare its intent that the rule of law is to be applied retroactively. In addition, the General Assembly must confine such retroactive enactments within the constitutional boundaries relative to retroactive legislation.

Maryland Insurance contends that the General Assembly clearly expressed an intent to make the amended provisions in R.C. 3937.18 retroactive in operation. Maryland Insurance further contends that those amended provisions may be applied retroactively without violating the limitation on retroactive legislation found in Section 28, Article II of the Ohio Constitution.

R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." On its face, R.C. 1.48 mandates that a reviewing court undertake a threshold statutory analysis to determine whether the legislature expressed a retroactive intent before the court considers any constitutional questions under Section 28, Article II. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus. Thus, "[t]he issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply." *Id.*

After reviewing Sections 7, 8, and 9 of Am.Sub.S.B. No. 20, we cannot find any language representing a *clear* indication that the General Assembly intended the amendments to R.C. 3937.18 to be retroactive in operation. The General Assembly did not use the term "retroactive" or "retrospective" in any of the sections, nor did it state that the amendments applied to pending cases. Maryland Insurance points to the General Assembly's "declare and confirm" language as a clear manifestation of intent. This language, however, is vague and ambiguous and appears to be mere surplusage to the legislature's supersedure of *Savoie.* Indeed, considering that the General Assembly so explicitly and unequivocally expressed its intent to supersede *Savoie,* it would be anomalous to think that the General Assembly would be any less explicit in expressing its intent with regard to retroactivity. Therefore, in the absence of a clear and express indication to the contrary, we must presume that the amendments to R.C. 3937.18 are prospective in operation, and we do not need to consider any constitutional questions under Section 28, Article II. Accord *United Serv. Auto. Assn. v. Mack* (May 17, 1995), Clark App. No. 94–CA–32, unreported, 1995 WL 301437.

Based on the foregoing discussion, *Savoie* controls the disposition of this appeal. This court has determined that under *Savoie,* a person injured by an underinsured motorist tortfeasor is entitled to collect up to the full limit of an

underinsured motorist policy to the extent that his damages exceed the amount he has already received from the tortfeasor. *Cole v. Holland* (Oct. 19, 1994), Summit App. No. 16703, unreported, 1994 WL 581407, discretionary appeal allowed (1995), 71 Ohio St.3d 1493, 646 N.E.2d 468. In this case, in addition to the amounts he has received from the tortfeasor, Cartwright has also received amounts from an underinsured motorist policy with Liberty Mutual in which he was the named insured. We find that these amounts may be set off against Cartwright's total damages in calculating Maryland Insurance's liability. Thus, Cartwright is entitled to recover from Maryland Insurance up to the full policy limit of $300,000 to the extent his damages exceed the $125,000 he has received from the tortfeasor's liability policy ($25,000) and the underinsured motorist policy in which he was the named insured ($100,000).

The assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and SLABY, J., concur.