Annette E. LEISURE, et al., Plaintiffs,

v.

**STATE FARM FIRE & CASUALTY CO., Defendant.**

No. 5:97CV468.

United States District Court, N.D. Ohio.

March 27, 1998.

---

Steven P. Okey, Okey Law Firm, Canton, OH, for Plaintiff.

Joseph H. Wantz, Henry A. Hentemann, J. Michael Creagan, Meyers, Hentemann, Schneider & Rea, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

On February 25, 1997, the Plaintiffs, Annette E. Leisure and Dennis Leisure, filed the above captioned action against State Farm Fire and Casualty Company alleging the wrongful denial of uninsured motorist coverage when purchasing the umbrella insurance policy issued by the Defendant. The Plaintiffs seek declaratory judgment compelling the Defendant to pay the uninsured motorist coverage. Jurisdiction is predicated on 28 U.S.C. §§ 1332(a) and 1441.

On January 5, 1998, the Plaintiffs filed a Motion for Summary Judgment pursuant to FED. R. CIV. P. 56(a). On January 15, 1998, the Defendant filed a Cross–Motion for Summary Judgment. For the following reasons, the Plaintiffs' Motion is **GRANTED.**

## I. FACTS

The Plaintiffs are the surviving mother and father of their son, Jason, who was killed in an automobile crash on August 17, 1995. Prior to this incident, the Plaintiffs had maintained automobile and homeowner's insurance with the Defendant. In July, 1993, the Plaintiffs spoke to their agent's assistant and office manager, Karen A. Fierstos, about obtaining an umbrella policy with the Defendant. On July 12, 1993, Ms. Fierstos prepared three quotes for an umbrella policy. The quotes were for a $1,000,000 policy and included an offer of "uninsured motor vehicle coverage." On the first page of the quotes, Ms. Fierstos wrote, "Mld to Ins'd 7–13–93. Qtd they'll CB if interested." According to the deposition of Ms. Fierstos, these notations meant that she mailed the quotes to the Plaintiffs on July 13, 1993, and that they would call back if they were interested.

No further contact was made between the Plaintiffs and the Defendant for the next 14 months. The Plaintiffs did not accept the umbrella policy quotes, did not call back regarding the quotes, and no policy was issued. On or about September 21, 1994, Ms. Fierstos had a telephone conversation with Mrs. Leisure about the umbrella policy. In November, 1994, Ms. Fierstos discussed the policy with Mrs. Leisure, who subsequently indicated her desire to obtain the umbrella policy, but without the uninsured motorist coverage. During that telephone conversation, Ms. Fierstos made an oral offer and explanation of the uninsured motorist ("UM") coverage to the Plaintiffs. There were no new written quotes for the umbrella policy, nor any writing relating to the Uninsured motorist coverage.

Based upon the November, 1994, conversation, Ms. Fierstos filled out an application entitled "PERSONAL LIABILITY UMBRELLA APPLICATION" ("Umbrella Application"), and sent it to the Plaintiffs for their signatures. The Plaintiffs signed the application form and a box which stated that uninsured motorist coverage was rejected. Ms. Fierstos had placed an "X" in the rejection box prior to sending the application to the Plaintiffs. Ms. Fierstos mailed the application to the Plaintiffs on November 22, 1994. The Defendant issued umbrella policy No. 70–EG–5496–5, with an effective date of December 5, 1994. The Plaintiffs are the named insured under the policy. The policy provides liability coverage in the amount of $1,000,000 for a term of one year. The policy states that there is no Uninsured motorist coverage.

In a wrongful death action, the Plaintiffs sued the drivers of two other vehicles involved in the accident, George A. Motz, III and Jonathan Sanchez. Prior to the start of a trial on the wrongful death action, the Plaintiffs settled with Mr. Motz for $50,000 (the full amount of his liability coverage) and with Mr. Sanchez for $98,000 of his $100,000 liability coverage.

## II. STANDARD OF REVIEW

FED. R. CIV. P. 56(c) governs summary judgment and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir.1995). If the moving party meets this burden, then the non-moving party must

present additional evidence beyond the pleadings. *Id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

## III. ANALYSIS

The Plaintiffs contend that the Defendant failed to offer Uninsured motorist coverage as is required by OHIO REV. CODE § 3937.18 and the Ohio Supreme Court ruling in the case of *Gyori v. Johnston Coca–Cola Bottling Group, Inc.,* 76 Ohio St.3d 565, 669 N.E.2d 824 (1996). Thus, the Plaintiffs assert that they acquired Uninsured motorist coverage up to their liability limit of $1,000,000 by operation of law. The Defendant argues that the Plaintiffs have not acquired Uninsured motorist coverage by operation of law because they made a knowing and express, written rejection of Uninsured motorist coverage.

The Plaintiffs' and the Defendant's Motions for Summary Judgment create three issues which must be addressed: (1) whether the decision in *Gyori* applies retroactively, thereby requiring the Defendant to make a written offer of Uninsured motorist coverage to the Plaintiffs; (2) whether the Umbrella Application constitutes a written offer of Uninsured motorist coverage; and (3) whether the written rate quotes offered by the Defendant sixteen months prior to the Plaintiffs' signing of the Umbrella Application, had lapsed, when the quotes did not state a time for their expiration.

### A. RETROACTIVITY OF GYORI

▆ In *Gyori,* the Supreme Court of Ohio held that "there can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of Uninsured motorist coverage from the insurance provider." 669 N.E.2d at 827. The court determined that, although the statute does not require the offer to be in writing, such a requirement will prevent needless litigation about whether an offer was made. *Id.*

In the case of *Peerless Elec. Co. v. Bowers,* the court held, "[t]he general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation.... The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." 164 Ohio St. 209, 129 N.E.2d 467, 468 (1955). In *Cartwright v. Maryland Ins. Group,* the court determined that OHIO REV. CODE § 3937.18 is "remedial legislation." 101 Ohio App.3d 439, 655 N.E.2d 827, 829 (1995). Consequently, the appellant in that case did not have a vested right in the legislation. *Id.*

In *King v. Safeco Ins. Co.,* the First District Court of Appeals of Ohio stated that precluding the retrospective application of judicial decisions, due to contractual rights, is premised on state (OHIO CONST. art. II, § 28) and federal (U.S.CONST. art. I, § 10) constitutional prohibitions against the impairment of the obligations of contracts. 66 Ohio App.3d 157, 583 N.E.2d 1051, 1054 (1990). In *Van Fossen v. Babcock & Wilcox Co.,* the court held that a remedial statute is not within the "mischiefs" against which Article II, Section 28 of the Ohio Constitution was intended to protect. 36 Ohio St.3d 100, 522 N.E.2d 489, 496 (1988).

Applying the rule of *Peerless,* the Supreme Court's decision in *Gyori* will be applied retroactively, unless doing so would violate a contractual or vested right that had previously arisen. Since the court in *Cartwright* determined that OHIO REV. CODE § 3937.18 is remedial legislation, no vested rights could be acquired by the Plaintiffs. By applying the decisions of *King* and *Van Fossen,* the second exception under *Peerless* is not applicable to OHIO REV. CODE § 3937.18 because contractual rights are based on the constitutional prohibition against the impairment of contracts, namely, Article II, Section 28 of the Ohio Constitution. Moreover, as OHIO REV. CODE § 3937.18 is "remedial legislation," the statute is not within the protection of Article II, Section 28, and can not give rise to contractual rights. Thus, the *Gyori* requirement that an offer of Uninsured motorist coverage must be in writing is retroactive because neither of the two exceptions under *Peerless* are applicable to OHIO REV. CODE § 3937.18.

## B. UMBRELLA APPLICATION

 Insurance companies must offer Uninsured motorist coverage with every automobile liability or motor vehicle liability policy issued in Ohio. OHIO REV. CODE ANN. § 3937.18(A) (West 1995). The offer of Uninsured motorist coverage must be in writing and in an amount equivalent to the limit of liability stated in the policy. *Gyori*, 669 N.E.2d at 827; OHIO REV. CODE ANN. § 3937.18(A)(1). Furthermore, the purpose of requiring an offer of Uninsured motorist coverage is "to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated." *Abate v. Pioneer Mut. Cas. Co.*, 22 Ohio St.2d 161, 258 N.E.2d 429, 432 (1970). Consequently, Ohio's uninsured motorist statute should be construed liberally in order to effectuate the legislative intent that coverage be provided to individuals injured through the acts of uninsured motorists. *Curran v. State Auto. Mut. Ins. Co.*, 25 Ohio St.2d 33, 266 N.E.2d 566, 569 (1971).

 Importantly, a rejection of uninsured motorist coverage must be made expressly and knowingly. *Gyori*, 669 N.E.2d at 826. "However, to make a rational decision to reject coverage, a customer has to be aware of a contractual provision, understand its terms and agree to it." *Ady v. West Am. Ins. Co.*, 69 Ohio St.2d 593, 433 N.E.2d 547, 549 (1982). "[W]here the meaning of language used in a contract of insurance is doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured." *Blohm v. Cincinnati Ins. Co.*, 39 Ohio St.3d 63, 529 N.E.2d 433, 436 (1988).

 The language contained in the uninsured motorist coverage acceptance/rejection box on the Umbrella Application does not constitute a "written offer" pursuant to *Gyori*. The Umbrella Application does not describe uninsured motorist coverage nor does it offer such coverage in an amount equivalent to the limit of liability stated in the umbrella insurance policy. Consequently, the Umbrella Application does not provide sufficient information upon which the Plaintiffs can base a rational decision to reject uninsured motorist coverage. Furthermore,

the language in the acceptance/rejection box states, "I have been offered … Uninsured/Underinsured Motorist Coverage." Thus, the Umbrella Application indicates that an offer has been made, but the details of that offer are not articulated anywhere on the application form. In addition, the language is written in the past tense, indicating that uninsured motorist coverage is not presently being offered.

Finally, the Defendant's application form coupled with Mrs. Leisure's conversations with Ms. Fierstos in July, 1993, and November, 1994, also fails to satisfy the requirements presented in *Gyori*. Despite the Defendant's contention, such facts are unlike Lumbermens' offer of uninsured motorist coverage to Johnston in *Gyori*, because there is no "proposal" supplied with the application form which explains uninsured motorist coverage rights. The facts in the present action are more similar to those in the *Gyori* case concerning Johnston's uninsured motorist claim against National Union, where Johnston's insurance agent, Rollins, "explained the coverages available, including uninsured motorist coverage, and then together, Johnston and Rollins created specifications for the type of insurance desired." *See Gyori v. Johnston Coca–Cola Bottling Group, Inc.*, No. L–94–078, 1995 WL 244150, at *2 (Ohio App.6th Dist. Apr. 28, 1995), *rev'd*, 76 Ohio St.3d 565, 669 N.E.2d 824 (1996). The court determined that this did not constitute a written offer of uninsured motorist coverage and uninsured motorist coverage was, therefore, acquired by operation of law. *Gyori* 669 N.E.2d at 827. Thus, this Court holds that the Umbrella Application does not constitute a written offer of uninsured motorist coverage pursuant to *Gyori*.

## C. RATE QUOTES

 Next, the Plaintiffs argue that the written rate quotes offered on July 12, 1993, had expired prior to their signature in the acceptance/rejection box on the Umbrella Application provided over 16 months later. The Defendant's own agents have stated that rates change on a yearly basis. (Quickle Dep. at 26.) Furthermore, the Defendant's agent admitted that the offer of coverage

(Plaintiffs' Exhibits 10 and 11) with the rate and premium contained in it is not open indefinitely, because the premium is subject to change. (Quickle Dep. at 71.) Another agent of the Defendant, James R. McKinney, admitted that the rate quotes offered on July 12, 1993, were "obviously not" quotes for the umbrella policy issued to the Plaintiffs because "[t]here's a year and a half lapse ... between the original quote and the application time." (McKinney Dep. at 33.) Consequently, this Court concludes that the written quotes offered on July 12, 1993, had expired prior to the Plaintiffs' signature on the Umbrella Application in November, 1994.

### IV. CONCLUSION

Based upon the foregoing reasons, the Court finds that no genuine issues of material fact exist in the above-captioned matter. Accordingly, Plaintiffs' Motion for Summary Judgment is **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**

### JUDGMENT

This matter is before the Court upon the motions for summary judgment of the Plaintiffs (Dkt.No.20) and the Defendant (Dkt. No.22). For the reasons stated in the attached Memorandum Opinion and Order, the Plaintiffs' motion is **GRANTED** and the Defendant's motion is **DENIED.**

Accordingly, **JUDGMENT** is granted in favor of the Plaintiff.

**IT IS SO ORDERED.**