**PARKS et al., Appellants,**

v.

**RICE et al., Appellees.**

[Cite as *Parks v. Rice*, 157 Ohio App.3d 182, 2004-Ohio-2477.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

Nos. 02CA197 and 02CA198.

May 14, 2004.

Robert W. Kerpsack, for appellants.

Davis & Young, L.P.A., Larry D. Wilkes and Richard M. Garner, for appellees Premium Marcor Group, Inc. and Westfield Insurance Company.

Reminger & Reminger, Michael P. Murphy and Philip S. Heebsh, for appellees Petro Stopping Centers and Employers of Wausau, A Mutual Company.

---

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, their supplemental authority, and their oral arguments before this court. Plaintiffs-appellants, Glennda and Richard Parks, appeal from the decisions of the Mahoning County Court of Common Pleas, which granted summary judgment in favor of defendants-appellees, Premium Marcor Group, Inc., Westfield Insurance Company, Petro Stopping Centers, L.P., and Employers of Wausau A Mutual Company ("Wausau"). The Parks's claims against the appellees are based on *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, which was recently limited by the Ohio Supreme Court in *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. Because we conclude that the court's decision in *Galatis* excludes the Parks from coverage, we affirm the trial court's decision.

### Facts

{¶ 2} On December 16, 1998, Glennda Parks was driving Richard's vehicle home from work when it was struck by another motorist, who had failed to yield at an intersection stop sign. At the time of the accident, Glennda was employed by Petro Shopping Centers and Richard was employed by Premium Marcor. Petro Shopping Centers had a commercial general-liability policy and a business auto-liability policy through Wausau, while Premium Marcor had a commercial general liability policy through Westfield. Glennda suffered injuries as a result of the accident and the Parkses eventually sued each of the appellees for uninsured/underinsured motorist ("UM/UIM") coverage. The Parks's claims were based on *Scott–Pontzer* and *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* (1999), 86 Ohio St.3d 557, 715 N.E.2d 1142.

{¶ 3} During the course of the litigation, the Parkses filed a motion for partial summary judgment against Wausau on the issue of whether they satisfied all the prerequisites for perfecting an underinsured-motorist claim against Wausau. Wausau responded to this motion and cross-moved for summary judgment. The trial court granted the Parkses' partial motion for summary judgment, finding that the policy was a motor vehicle policy and that Glennda was an insured under that policy.

{¶ 4} Each of the appellees then moved for summary judgment. The Parkses responded to each of these motions with cross-motions for summary judgment. The trial court granted summary judgment to each of the appellees. The Parks have appealed from the two judgment entries granting judgment to the appellees. These cases have been consolidated for purposes of appeal.

## Westfield v. Galatis

{¶ 5} As the parties freely acknowledge, the Parkses' claims for underinsured motorist benefits from the appellees are based on the Ohio Supreme Court's decision in *Scott–Pontzer* and *Ezawa*. In *Scott–Pontzer*, the court held that a person can recover underinsured motorist benefits from her employer's automobile insurance carrier if the employer is the named insured and a corporation and the commercial automobile liability policy defines an insured as "you". The court held that the "you" in the insurance policy was ambiguous, so it read the insurance policy against the insurance company and held that a corporation's employees are insureds under these types of insurance policies. Id., 85 Ohio St.3d at 664, 710 N.E.2d 1116. *Ezawa* extended this rationale to an employee's family members.

{¶ 6} The Ohio Supreme Court recently limited the application of *Scott–Pontzer* and overruled *Ezawa* in *Galatis*. *Galatis* at paragraphs two and three of the syllabus. "Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. (*King v. Nationwide Ins. Co.* [1988], 35 Ohio St.3d 208, 519 N.E.2d 1380, applied; *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* [1999], 85 Ohio St.3d 660, 710 N.E.2d 1116, limited.)

{¶ 7} "Where a policy of insurance designates a corporation as a named insured, the designation of 'family members' of the named insured as other insureds does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured. (*Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* [1999], 86 Ohio St.3d 557, 715 N.E.2d 1142, overruled.)" Id.

{¶ 8} As stated above, Glennda was driving home from work when the accident occurred. It has long been an established principle of Ohio law that an employee is generally not within the scope of her employment while she is traveling to and from her place of employment. See *Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 689 N.E.2d 917. This is because the "time spent commuting is considered a private activity, not one undertaken in the service of the employer." *Slagle v. White Castle Sys., Inc.* (1992), 79 Ohio App.3d 210, 214, 607 N.E.2d 45. This rule has exceptions, but none of those exceptions applies in this case. See

*Gonzalez v. Admr., Bur. of Workers' Comp.*, 7th Dist. No. 03 MA 86, 2004-Ohio-1562, 2004 WL 614996.

{¶ 9} At oral argument, the Parkses contended that this court should create a new standard for evaluating when an employee is within the scope of her employment for the purposes of UM/UIM coverage. We decline to do so. We see no reason to fashion a new rule of law when the established rule has worked so well for so long. Accordingly, we must conclude that Glennda was not in the scope of her employment when the accident occurred.

{¶ 10} *Galatis* states that an employee is not an "insured" for the purposes of UM/UIM coverage if the employee is not within the scope of her employment when she is injured unless the policy contains specific language to the contrary. Glennda was not in the scope of her employment when she was injured, and the insurance contracts do not contain specific language extending coverage to the Parkses. So if *Galatis* applies to the Parkses' claims, then the trial court's decision granting summary judgment to the appellees must be affirmed.

### Uninsured/Underinsured Motorist Coverage by Operation of Law

{¶ 11} The Parkses first argue that *Galatis* does not apply to corporate insurance policies that provide UM/UIM coverage by operation of law, citing *Mason, Executor v. Royal Ins. Co. of Am.*, 5th Dist. No. 2003 CA 00029, 2003-Ohio-7047, 2003 WL 23009004. But *Mason* does not support their argument. In *Mason*, the plaintiffs were attempting to recover under their personal automobile policies. Accordingly, there was no dispute over who was an insured under the terms of the policies. Instead, the subject being litigated was whether the language in the policies that attempted to restrict coverage was valid.

{¶ 12} In this case, the issue is not whether the policies' language can restrict the coverage; it is whether the Parkses are insureds under the policies. The Parkses do not cite any authority supporting their argument that *Galatis* does not apply to corporate insurance policies that provide UM/UIM coverage by operation of law, and we can think of no reason why *Galatis* should not apply in these situations. The Parkses' arguments to the contrary are meritless.

### Validity of *Galatis*

{¶ 13} The Parkses next argue that we should not apply *Galatis* in this case because it was wrongly decided. They argue that the Ohio Supreme Court's decision in *Galatis* failed to meet the third prong of the stare decisis test. They claim that parties have expended a significant amount of time, money, and resources litigating claims arising under *Scott–Pontzer* and *Ezawa* and that the Ohio Supreme Court's decision in *Galatis* creates an undue hardship upon those who have relied on those cases when litigating those claims.

{¶ 14} We note that this same argument was made to the Ohio Supreme Court in the motions for reconsideration filed in *Galatis* and that the Ohio Supreme Court denied those motions for reconsideration. This demonstrates that the Ohio Supreme Court specifically considered and rejected this argument. And we emphasize that it is not our place to question the propriety of the Ohio Supreme Court's decision. In *Galatis*, the Ohio Supreme Court expressly overruled *Ezawa* and limited *Scott–Pontzer* and we must follow that binding precedent. The Parks' arguments to the contrary are meritless.

Retroactivity

{¶ 15} Finally, the Parkses argue that this court cannot retroactively apply *Galatis* to this case for three reasons. First, the Parkses claim that doing so would violate Section 16, Article I of the Ohio Constitution, which provides:

{¶ 16} "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

{¶ 17} According to the Parkses, once the Ohio Supreme Court decided *Scott–Pontzer* and *Ezawa*, it created a remedy for certain injured parties. And they argue that any subsequent decision by the Ohio Supreme Court cannot take away that remedy. But this is an improper understanding of what the Ohio Constitution means by "remedy". " ' "Remedy" means the action or means given by law for the recovery of a right. It pertains more particularly to those modes of procedure and pleading which lead up to and end in the judgment.' " *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 100, 566 N.E.2d 154, quoting *Keplinger v. Kinsser* (Montgomery C.P.1933), 31 Ohio N.P. (N.S.) 338, 342, 1933 WL 2361. An injured party has the right to a means of action for recovery from an injury, not the right to a particular means of action. *State ex rel. Michaels v. Morse* (1956), 165 Ohio St. 599, 605, 60 O.O. 531, 138 N.E.2d 660; see, also, *Cartwright v. Maryland Ins. Group* (1995), 101 Ohio App.3d 439, 443, 655 N.E.2d 827. And no one has a vested interest in a particular remedy. Id.

{¶ 18} In this case, the Parkses had a remedy for their injury. For instance, they had the opportunity to bring a cause of action against the tortfeasor. But they do not have the constitutional right to recover from their employers' insurers merely because *Scott–Pontzer* and *Ezawa* were once the law in Ohio. The right-to-a-remedy clause in the Ohio Constitution does not prevent us from applying *Galatis* retroactively.

{¶ 19} The Parkses' second and third arguments against the retroactive application of *Galatis* have been considered and rejected by the Ohio Supreme Court. The Parkses' second argument is that retrospective application of *Galatis*

would violate the doctrine established in *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 57 O.O. 411, 129 N.E.2d 467. Under the doctrine established by *Peerless,* a decision by the Ohio Supreme Court that overrules a former decision by that court becomes retrospective in its operation, and the effect is not that the former decision was bad law, but that it never was the law. See *Wagner v. Midwestern Indem. Co.* (1998), 83 Ohio St.3d 287, 289, 699 N.E.2d 507.

{¶ 20} Of course, this doctrine has exceptions. For instance, a decision will not apply retroactively in a case where contractual rights have arisen or vested rights have been acquired under the prior decision. *Peerless,* 164 Ohio St.3d at 210, 57 O.O. 411, 129 N.E.2d 467. Likewise, courts will not apply a decision retroactively in those instances in which a court expressly indicates that its decision is to apply only prospectively. See *Lakeside Ave. L.P. v. Cuyahoga Cty. Bd. of Revision* (1999), 85 Ohio St.3d 125, 127, 707 N.E.2d 472.

{¶ 21} The Parkses argue that the first of these exceptions applies. According to the Parks, the Ohio Supreme Court's decisions in *Scott–Pontzer* and *Ezawa* gave them the right to recover under the terms of their employers' insurance policies. So they believe that their rights under those contracts "arose" under that caselaw and cannot be extinguished through retroactive application of *Galatis*.

{¶ 22} We dispute the viability of this argument. The reason why we do not retrospectively apply decisions in a case where contractual rights have arisen or vested rights have been acquired under the prior decision is because courts generally will not disturb the operation of contracts formed in contemplation of and reliance upon law that is later overturned by judicial decision. See *Royal Indemn. Co. v. Baker Protective Serv., Inc.* (1986), 33 Ohio App.3d 184, 186, 515 N.E.2d 5. This is related to the rule that the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties. *Ross v. Farmers Ins. Group of Companies* (1998), 82 Ohio St.3d 281, 282, 695 N.E.2d 732. The contract in question here was not between the Parkses and this insurer, but between the employer and insurer. It could not have been the basis for any reliance on the part of the Parkses.

{¶ 23} More importantly as to the Parkses' argument, we are bound to reject it. Immediately after the Ohio Supreme Court decided *Galatis,* it resolved numerous other *Scott–Pontzer*-related appeals that were pending before it. See *In re Uninsured and Underinsured Motorist Coverage Cases,* 100 Ohio St.3d 302, 2003-Ohio-5888, 798 N.E.2d 1077. In one of those cases, *German v. Therm–O–Disc, Inc.,* case No. 2002–0803, the plaintiff made this same argument in a motion for reconsideration. The Ohio Supreme Court rejected this argument and continued to apply *Galatis* retroactively to *German* and the other cases it resolved in *In re Uninsured & Underinsured Motorist Coverage Cases.*

{¶ 24} In addition, the justices on the Ohio Supreme Court have even been more explicit in their decision to apply *Galatis* retroactively. In *Fish v. Ohio Cas. Ins. Co.*, 101 Ohio St.3d 1210, 2004-Ohio-224, 802 N.E.2d 149, the Ohio Supreme Court did not accept a discretionary appeal. Two justices separately concurred with that decision to emphasize that *Galatis* should be applied retrospectively. Id. at ¶ 2. Given the Ohio Supreme Court's actions, we are bound to follow their lead and apply *Galatis* retroactively.

{¶ 25} In the Parkses' third argument, they contend that retroactive application of *Galatis* violates due process. In making this argument, the Parkses rely on *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. This argument was also raised in the motion for reconsideration filed in *German.* Thus, the Ohio Supreme Court has considered and rejected that argument.

Conclusion

{¶ 26} Under the new rule of law stated in *Galatis,* the Parkses have no claim against any of the appellees under the policies in question because Glennda was not in the scope of her employment at the time of the accident and the policies do not have specific language to the contrary. And although they make many arguments regarding why this court cannot or should not apply *Galatis* to this case, we are bound to follow the decisions of the Ohio Supreme Court. The Ohio Supreme Court did not specifically state that its decision in *Galatis* would have only prospective application, and the court applied *Galatis* retroactively, even after arguments to the contrary. Accordingly, we must conclude that the Parkses are not insureds under the corporate insurance policies in question. The judgment of the trial court is affirmed.

Judgment affirmed.

WAITE, P.J., and VUKOVICH, J., concur.