DECISION AND JOURNAL ENTRY
{¶ 1} Defendant/Appellant, T.F., appeals the judgment invoking the adult portion of a previously issued blended sentence by the Summit County Court of Common Pleas, Juvenile Division. We affirm.
 {¶ 2} On April 23, 2007, Defendant, who was 17 years old at the time, entered into a plea agreement with the State related to his conduct in the shooting death of ShawRica Lester outside of the Cage Nite Club on January 26, 2007. Defendant pled to one count of involuntary manslaughter, a first-degree felony if committed by an adult; felonious assault, a second-degree felony if committed by an adult plus a firearm specification; participation in a criminal gang, a second-degree felony if committed by an adult plus a firearm specification; and aggravated riot, a fourth-degree felony if committed by an adult plus a firearm specification. The plea agreement stipulated that Defendant would be committed to the Department of Youth Services ("DYS") for a minimum period of ten and one-half years or until Defendant reached the age of 21 and that *Page 2 
Defendant would be designated a serious youthful offender and receive an adult sentence of thirteen years. Defendant was incarcerated in DYS, Marion Juvenile Correctional Facility.
 {¶ 3} On August 24, 2007, the State filed a motion to invoke the adult portion of Defendant's serious youthful offender sentence based on Defendant's refusal to testify in cases against other persons that participated in the events of January 26, 2007. The State argued that Defendant had "engaged in conduct that creates a substantial risk to the safety or security of the community" and that the continuation "of participation in criminal gang activity's obstruction of justice was the purpose of [Defendant's] refusal to testify as ordered." The State maintained that Defendant's conduct "demonstrated very clearly that he refused to be rehabilitated."
 {¶ 4} On September 18, 2007, the State filed a supplement to its August 24, 2007 motion to invoke adult portion of Defendant's serious youthful offender sentence. In this motion, the State argued again that, Defendant had "engaged in conduct that creates a substantial risk to the safety or security of the community" by engaging in fighting, rioting, "and promoting security threat group activity, [as well as], continuing the same gang related attitudes that he exhibited when he was identified shouting gang slogans in the Summit County Juvenile Detention Facility, * * * and when he defied this Court's order to testify." The State maintained that this conduct further demonstrated that Defendant was unwilling to be rehabilitated and is "unlikely to be rehabilitated during the remaining period of juvenile jurisdiction[.]"
 {¶ 5} Beginning on November 19, 2007, a hearing was held to address the State's motion and supplemental motion. Four witnesses testified on behalf of the State: Eric Montgomery (a juvenile parole officer employed by DYS), Karl Huebner (the operations manager at Marion), and Marcus Patterson and Corey Mack (corrections officers at Marion). *Page 3 
Defendant testified on his own behalf as did two other witnesses: Tecca Thompson (a social worker at Marion), and James Koss (a unit administrator at Marion).
 {¶ 6} On November 26, 2007, the trial court issued its judgment entry ("Judgment Entry"). The Judgment Entry found that, "[b]y his violent behavior in [Marion], [Defendant] has demonstrated an unwillingness to become rehabilitated." The Judgment Entry then granted the State's motion to invoke the adult sentence, imposed the previously suspended adult sentence of thirteen years, and terminated DYS's custody of Defendant ("Judgment Entry"). Defendant timely appealed the Judgment Entry and raises three assignments of error.
 Assignment of Error One "The trial court abused its discretion by imposing the [Defendant's] serious youthful offender's sentence of 13 years of incarceration in Ohio's Department of Rehabilitations and Corrections because insufficient evidence was presented by the [State] showing that [Defendant] was not amenable to rehabilitation if he had continued his incarceration within Ohio's Department of Youth Services."
 Assignment of Error Two "The trial court erred in imposing [Defendant's] adult sentence, in part, due to its contempt of court ruling because, on a juvenile level, contempt of court is punishable in a manner similar to crimes punishable as a misdemeanor."
 {¶ 7} In his first assignment of error, Defendant argues that trial court abused its discretion when it imposed his adult sentence because there was no evidence that Defendant was not amenable to rehabilitation as required by R.C. 2152.14(E). In his second assignment of error, Defendant maintains that the Judgment Entry improperly punishes him for being found in contempt of court for refusing to testify in other related cases. We disagree.
 {¶ 8} "We review the order of a disposition in a juvenile case for abuse of discretion." State v. Matha (1995), 107 Ohio App.3d 756, 760. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its *Page 4 
ruling. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621. "While the objective of the juvenile system is rehabilitation rather than punishment, `[t]he juvenile justice system, together with its rehabilitative objective, is purely a statutory creation * * * and it may contain punitive elements.' (Citation omitted.)" Matha, 107 Ohio App.3d at 760, quoting In reWoodson (1994), 98 Ohio App.3d 678, 682.
 {¶ 9} We initially note that it is undisputed that Defendant received a blended sentence after entering into a plea agreement. It is also undisputed that the State advised Defendant that it would be seeking serious youth offender designation for Defendant in that plea agreement and the trial court found Defendant to be a serious youth offender in its sentencing entry of April 23, 2007. Defendant did not appeal the designation.
 {¶ 10} R.C. 2152.14 sets forth the procedure by which a trial court may invoke the adult portion of a sentence upon a serious youthful offender. It states, in relevant part:
 "(E)(1) The juvenile court may invoke the adult portion of a person's serious youthful offender dispositional sentence if the juvenile court finds all of the following on the record by clear and convincing evidence:
 "(a) The person is serving the juvenile portion of a serious youthful offender dispositional sentence.
 "(b) The person is at least fourteen years of age and has been admitted to a department of youth services facility, or criminal charges are pending against the person.
 "(c) The person engaged in the conduct or acts charged under division (A), (B), or (C) of this section, and the person's conduct demonstrates that the person is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction." R.C. 2152.14(E). *Page 5 
 {¶ 11} R.C. 2152.14(A)(2) states that a motion to invoke the adult portion of the dispositional sentence "shall state that at least one incident of misconduct" of the type described in R.C. 2152.14(A)(2)(a) and (b) "occurred after the person reached fourteen years of age:
 "(a) The person committed an act that is a violation of the rules of the institution and that could be charged as any felony or as a first degree misdemeanor offense of violence if committed by an adult.
 "(b) The person has engaged in conduct that creates a substantial risk to the safety or security of the institution, the community, or the victim." R.C. 2152.14(A)(2)(a) and (b).
 {¶ 12} It is undisputed that on November 19, 2007, Defendant was serving the youth portion of his serious youth offender sentence and that Defendant was 14 years of age. Thus, the only remaining elements for consideration by the trial court prior to invoking Defendant's adult sentence were: (1) whether Defendant violated the rules of Marionor engaged in conduct that created a substantial risk to the safety of the institution; and (2) whether Defendant's conduct demonstrated that he was unlikely to be rehabilitated. We will discuss each of the trial court's determinations separately.
 {¶ 13} First, the Judgment Entry found, by clear and convincing evidence, that Defendant violated the rules of DYS in incidents occurring on May 31, 2007, and July 13, 2007. The trial court found that these rule violations posed "a substantial risk to the security of the institution and the safety of both [DYS] staff and other committed youth." The Judgment Entry held that the video footage and testimony of a fight on May 31, 2007, "provides a chilling picture of [Defendant's] conduct in the institution." As noted by the trial court, Defendant's "actions could have resulted in charges of either assault in violation of R.C. 2903.13, a misdemeanor of the first degree if committed by an adult, or aggravated riot in violation of R.C. § 2917.02(B), a felony of the fourth degree if committed by an adult. These actions of fighting and failing to *Page 6 
follow institutional rules put the JCO's, other youth, and the safety of the facility at risk." Based upon our review of the record, we agree. The video demonstrates that Defendant did not act in self-defense as he argued, but that he was the aggressor.
 {¶ 14} The trial court similarly found that Defendant was the aggressor in a "brawl" that occurred on July 13, 2007, as evidenced by a video tape. The trial court found that Defendant's violation of the rules on July 13, 2007, "could have resulted in two charges of assault (M1) in violation of R.C. § 2903.13, and a charge of aggravated riot (F4) in violation of R.C. 2917.02(B)." We agree with the trial court.
 {¶ 15} We hold that the trial court did not abuse its discretion when it determined that Defendant "committed rule violations that placed the safety and security of those at Marion at substantial risk and that his actions are such that could have resulted in three charges of assault and two charges of aggravated riot."
 {¶ 16} On the issue of rehabilitation, the court found that Defendant was unlikely to be rehabilitated in the juvenile system. The trial court considered Defendant's conduct, the testimony of the JCO's, Thompson, Koss and the Defendant in making its determination. The trial court based its decision on five considerations.
 {¶ 17} First, the trial court found that Defendant's fighting in DYS and "reference to fights between groups from `different parts of the state,'" demonstrated that the gang mentality that resulted in the death of ShawRica Lester "remains firmly embedded." The trial court then noted that Defendant showed no remorse for his conduct in DYS and did not believe his conduct was wrong because he was just "`defending' himself in a fight against a group of Columbus youth even though he was never threatened physically" in the altercation of May 31, 2007, and was "looking out for his dude" in the incident of July 13, 2007. The trial court found that *Page 7 
Defendant's testimony demonstrated that he "sees nothing wrong with his actions and clearly has no intent to change them." The trial court also supported its determination that Defendant was not likely to be rehabilitated with the fact that Defendant was failing all of his school classes. Further, the trial court noted, Defendant's refusal to answer questions pursuant to subpoena demonstrated that Defendant is "defiant to the justice system and feels he is above the law." Finally, the trial court acknowledged Thompson's and Koss's testimony in favor of Defendant on this issue, but noted that Defendant was motivated to be on his best behavior with Thompson and Koss because they "were responsible for deciding when [he] could make telephone calls out of the facility." The trial court noted that neither Thompson nor Koss was fully aware of either of the fights, other than that Defendant was involved in them. The trial court did not abuse its discretion in determining that Defendant was not likely to be rehabilitated in the juvenile system and invoking the adult portion of Defendant's sentence.
 {¶ 18} We note that Defendant argues in both his first and second assignments of error that the trial court improperly considered his contempt findings when it decided to invoke the adult portion of his sentence. The Judgment Entry does take judicial notice of Defendant's contempt findings and references Defendant's refusal to comply with subpoenas as evidence that he is defiant to the justice system. However, the adult portion of the sentence was invoked after the trial court determined that Defendant could not be rehabilitated primarily because Defendant violated DYS rules causing a substantial risk to the employees and residents of Marion. See R.C. 2152.14(A)(2).
 {¶ 19} Defendant's first and second assignments of error are overruled.
 Assignment of Error Three "The imposition of a discretionary adult sentence under Ohio's Serious Youthful Offender law violates a juvenile's rights under the Due Process Clauses of the *Page 8 Fifth and Fourteenth Amendments to the United States Constitution and Jury Trial Clause of the Sixth Amendment to the United States Constitution."
 {¶ 20} Defendant argues that the invocation of the adult portion of his sentence was unconstitutional because it required judicial fact-finding in contravention of the holdings in Apprendi v. NewJersey (2000), 530 U.S. 466, and Blakely v. Washington (2004)542 U.S. 296, as interpreted by State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. The State argues that Defendant forfeited this argument on appeal and did not argue plain error.
 {¶ 21} Defendant did not forfeit this argument on appeal. Defense counsel filed a motion for stay asking the trial court to stay proceedings while the Supreme Court of Ohio considered the constitutionality of Ohio's serious youthful offender statute vis-à-vis Foster, Apprendi, and Blakely, in two cases that were before it. During the November 19, 2007 hearing, the trial court denied Defendant's motion and distinguished this case from the two cases pending before the Supreme Court of Ohio. Defense counsel then lodged her continuing objection.
 {¶ 22} Neither we, nor any other district, has dealt with R.C. 2152.14
vis-à-vis Foster. The question here is whether the Ohio Legislature's mandate that the trial court find certain facts by clear and convincing evidence prior to invoking the adult portion of a blended sentence is constitutional given the holding in Foster prohibiting fact-finding by a judge as being a violation of the Sixth Amendment right to trial. The two cases currently pending before the Supreme Court of Ohio do not directly address this question. See, State v. D.H., 169 Ohio App.3d 798,2006-Ohio-6953 (holding that findings pursuant to R.C. 2152.13 do not violate a juvenile's jury-trial rights in contravention of Blakely andFoster because neither the United States nor the Ohio Constitution provides a right to a jury trial in juvenile-delinquency proceedings and because juvenile proceedings and laws are rehabilitation-focused) andIn re Sturm, 4th Dist. No. 05CA35, 2006-Ohio-7101 (holding that because defendant was subject to Ohio's serious youthful offender *Page 9 
statute by virtue of his delinquency finding for murder, the range of his potential punishment included the applicable adult punishment as part of a blended sentence under R.C. 2152.13, thus allowing a trial court to take into account the nature and circumstances of the offense in deciding the punishment within that prescribed range). These cases address the constitutionality of Ohio's serious youth offender statute with facts specifically related to the initial designation of a defendant as a serious youth offender under R.C. 2152.13 and the adult portion of a blended sentence that can be imposed with such designation. While it is true that the Supreme Court of Ohio's decisions in In reD.H. and In re Strum may have an impact on the totality of Ohio's youth offender statute, such decision has not yet come and we will thus address this assignment of error on the merits.
 {¶ 23} The specific holding in Foster was that statutes that require judicial findings prior to the imposition of maximum, non-minimum, or consecutive sentences violate the Sixth Amendment right to jury trial vis-a-vis facts relied upon in enhancing the sentence. SeeFoster at paragraphs one and two of the syllabus. As noted above,Foster has not been expressly extended by the Supreme Court of Ohio to juvenile proceedings. Moreover, the Supreme Court of Ohio has held that, "although modern juvenile proceedings share some indicia of the criminal courts, juvenile proceedings are not considered criminal prosecutions for purposes of Sixth Amendment analyses." In re C.S.,113 Ohio St.3d 267, 2007-Ohio-4919, at ¶ 79, citing McKeiver v. Pennsylvania (1971),403 U.S. 528, 553. Nor has the Supreme Court of Ohio specifically addressed the issue of whether a juvenile is entitled to a speedy trial under the Sixth Amendment to the United States Constitution or Section 10, Article I of the Ohio Constitution. In re S.J.K., 9th Dist. No. 22721, 2008-Ohio-1223, at ¶ 14. Even if it were determined that juveniles are entitled to Sixth Amendment protections, and thus, the protections of Foster, here, *Page 10 
the trial court simply invoked the adult portion of a sentence that had already been imposed based on a plea agreement, not on an issue that was ever before a jury. The invocation hearing did not impose an original or new sentence.
 {¶ 24} With regard to the remaining allegations of this assignment of error, Defendant has not asserted any law or argument for the proposition that the trial court's invocation of the adult portion of a blended sentence pursuant to R.C. 2152.14 violates a juvenile's Fifth
and Fourteenth Amendment rights.
 {¶ 25} We hold that the invoking of the adult portion of a blended sentence after making findings pursuant to R.C. 2152.14 does not violate the holding of Foster. Defendant's third assignment of error is overruled.
 {¶ 26} Each of Defendant's assignments of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is *Page 11 
instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 WHITMORE, J. DICKINSON, J. CONCUR *Page 1