[Cite as *State v. Feaster*, 2011-Ohio-4222.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: TYREE FEASTER

C.A. No.     25395

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DL07-02-0513

DECISION AND JOURNAL ENTRY

Dated: August 24, 2011

BELFANCE, Presiding Judge.

{¶1}    Defendant-Appellant Tyree Feaster appeals from the judgments of the Summit County Court of Common Pleas, Juvenile Division.  For the reasons set forth below, we reverse.

I.

{¶2}    In April 2007, Mr. Feaster entered into a plea agreement in juvenile court with the State related to his conduct in the shooting death of Shawrica Lester on January 26, 2007.  At the time the crime was committed, Mr. Feaster was seventeen.  Mr. Feaster entered an agreement whereby he admitted to one count of involuntary manslaughter, a first-degree felony if committed by an adult; felonious assault, a second-degree felony if committed by an adult plus a firearm specification; participation in a criminal gang, a second-degree felony if committed by an adult plus a firearm specification; and aggravated riot, a fourth-degree felony if committed by an adult plus a firearm specification.  The agreement stipulated that Mr. Feaster would be committed to the Department of Youth Services ("DYS"), that Mr. Feaster would be designated

a serious youthful offender and that he would receive a suspended adult sentence of thirteen years. Post-release control was not mentioned in the agreement or at the plea hearing on the matter. The trial court issued a judgment entry adjudicating Mr. Feaster delinquent and imposing a juvenile disposition and a prison sentence of thirteen years which was suspended on the condition that Mr. Feaster successfully complete the juvenile disposition. The trial court also designated Mr. Feaster as a serious youthful offender. The judgment entry does not mention post-release control.

{¶3} On August 24, 2007, the State filed a motion to invoke the adult portion of Mr. Feaster's serious youthful offender sentence. The trial court granted the motion and imposed the previously suspended sentence. The judgment entry does not mention post-release control. Mr. Feaster appealed to this Court, and this Court affirmed. Mr. Feaster appealed to the Supreme Court of Ohio. While the appeal was pending, Mr. Feaster filed a motion to withdraw his plea based upon the lack of post-release control notification. The State thereafter filed motions in the Supreme Court to dismiss the appeal and vacate the judgments of this Court and the trial court asserting that the sentence was void. Upon consideration, the Supreme Court of Ohio granted the State's motions.

{¶4} Upon remand, the trial court conducted a hearing on Mr. Feaster's motion to withdraw his plea. The court denied Mr. Feaster's motion and issued a nunc pro tunc sentencing entry.

{¶5} Mr. Feaster has appealed, raising a single assignment of error for our review.

## II.

## ASSIGNMENT OF ERROR I

"The trial court erred in denying the Appellant's Motion to Withdraw his Guilty Plea because it failed to mention Post Release Control during his plea and sentencing hearing."

{¶6} Mr. Feaster asserts that the trial court erred in denying his motion to withdraw his plea as the trial court completely failed to mention post-release control at the plea hearing. We agree.

{¶7} While Mr. Feaster focuses on Crim.R. 11, because Mr. Feaster's admission took place in juvenile court, we begin with a discussion of Juv.R. 29(D). It provides that:

"The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

"(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

"(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

"The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule." Juv.R. 29(D).

"This rule places an affirmative duty upon the juvenile court. Prior to accepting an admission, the juvenile court must personally address the actual party before the court and determine that the party understands the nature of the allegations and the consequences of entering the admission." *In re Hall* (Mar. 13, 2002), 9th Dist. No. 20658, at *1.

{¶8} "An admission in a juvenile proceeding pursuant to Juv.R. 29(D) is analogous to a guilty plea made by an adult pursuant to Crim.R. 11(C). Both rules require respective trial courts to make careful inquiries in order to insure that the admission or guilty plea is entered voluntarily, intelligently and knowingly." (Internal quotations and citations omitted.) Id.

**{¶9}** The Supreme Court has held that "[i]f a trial court fails during a plea colloquy to advise a defendant that the sentence will include a mandatory term of postrelease control, the defendant may dispute the knowing, intelligent, and voluntary nature of the plea either by filing a motion to withdraw the plea or upon direct appeal." *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, paragraph one of the syllabus. "If the trial judge completely failed to comply with the rule, e.g., by not informing the defendant of a mandatory period of postrelease control, the plea must be vacated. A complete failure to comply with the rule does not implicate an analysis of prejudice." (Internal quotations and citations omitted.) *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, at ¶32.

**{¶10}** Several Ohio appellate courts have recognized that, although Crim.R. 29(D) does not expressly require the court to inform a juvenile of the maximum penalty, it does require the court to convey the consequences of the juvenile's admission. See *In re Smith,* 3rd Dist. No. 14-05-33, 2006-Ohio-2788, at ¶15, citing *In re Hendrickson* (1996), 114 Ohio App.3d 290, 293 ("We recognize that, unlike Crim.R. 11(C)(2), Juv.R. 29(D) does not expressly require the court to inform a juvenile of the maximum penalty he faces, but does require the court to convey the 'consequences' of the juvenile's admission. In *In re Hendrickson,* the Second District held that under Juv.R. 29(D), a juvenile court must apprise a juvenile of its dispositional options before the juvenile makes an admission."); *In re Hendrickson,* 114 Ohio App.3d at 293.

**{¶11}** Under the facts of this case, as a consequence of his plea agreement/admission, which included a serious youthful offender designation, Mr. Feaster faced a suspended prison sentence of thirteen years. "A serious-youthful-offender disposition consists of a 'blended' sentence: a traditional juvenile disposition and a stayed adult sentence." *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, at ¶2. Pursuant to his designation as a serious youthful offender, with

respect to the adult portion of Mr. Feaster's sentence, the trial court was required to impose "a sentence available for the violation * * * under Chapter 2929. of the Revised Code * * *." R.C. 2152.13(D)(1)(a).    Under R.C. 2929.14(F)(1), when the trial court sentenced Mr. Feaster to prison, the trial court was required to "include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment[.]" R.C. 2967.28(B)(1) provides that the term of post-release control for a first-degree felony is five years.

{¶12} The State asserts that Mr. Feaster was not actually sentenced to prison and thus no post-release control notification was necessary.   While it is true that Mr. Feaster's prison sentence was suspended, Mr. Feaster was still, nonetheless sentenced to prison.   See *State v. Douglas*, 9th Dist. No. 25564, 2011-Ohio-2380, at ¶4 ("In this case, the trial court sentenced Mr. Douglas to a prison term, but then suspended the term and placed him on community control. Accordingly, Sections 2967.28(B) and 2929.19(B)(3)(c) and (e) apply to his sentence.").

{¶13} Based upon Mr. Feaster's plea agreement, it is clear that the "consequences" Mr. Feaster should have been informed of included not only the term of the prison sentence that was suspended, but also his post-release control obligations.   Here, there is no dispute the trial court completely failed to mention the post-release control obligations that accompanied Mr. Feaster's suspended prison sentence.   Hence, Mr. Feaster was not informed that post-release control would be part of his prison sentence, the length of post-release control, or the consequences of violating post-release control.  *Sarkozy* at ¶4.   Accordingly, we are required to vacate his plea.   See id. at paragraph two of the syllabus ("If the trial court fails during the plea colloquy to advise a defendant that the sentence will include a mandatory term of postrelease control, the court fails

to comply with Crim.R. 11, and the reviewing court must vacate the plea and remand the cause."). Therefore, we sustain Mr. Feaster's assignment of error.

## III.

{¶14} In light of the foregoing, we sustain Mr. Feaster's assignment of error, vacate his plea, and remand the matter to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶15} Because of the unique procedural history of this case, as outlined in the other opinions, I concur in judgment only.

{¶16} This case highlights the conflict between two seemingly straightforward rules. The Supreme Court has held that a defendant must be informed that his sentence will include a mandatory term of post-release control and, absent that, the trial court has failed to comply with Crim.R. 11. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶26. The Supreme Court has also held that a trial court loses jurisdiction to consider a motion to withdraw a guilty plea after an appeal and affirmance by the appellate court. *State ex rel. Special Prosecutors v. Judges, Belmont Cty. Court of Common Pleas* (1978), 55 Ohio St.2d 94, 97-98.

{¶17} It is undisputed that Feaster was not informed about post-release control before he entered his plea. According to *Sarkozy*, "[i]f a trial court fails during a plea colloquy to advise a defendant that the sentence will include a mandatory term of postrelease control, the defendant may dispute the knowing, intelligent, and voluntary nature of the plea either by filing a motion to withdraw the plea or upon direct appeal." *Sarkozy*, at paragraph one of the syllabus. Feaster filed a motion to withdraw his plea, as authorized by *Sarkozy*. Accordingly, I conclude that the trial court was authorized to consider his motion to withdraw, notwithstanding the general proposition from *Special Prosecutors* that this Court has understandably relied on in other cases.

WHITMORE, J.
DISSENTS, SAYING:

{¶18} I respectfully dissent, as I would overrule Feaster's sole assignment of error. Although I would not employ the same reasoning as the trial court, I would conclude that the

trial court's ultimate decision not to allow Feaster to withdraw his plea is correct for the following reasons.

{¶19} The Supreme Court has long recognized that Crim.R. 32.1 "does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw [a] guilty plea subsequent to an appeal and an affirmance by the appellate court." *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, at ¶61, quoting *State ex rel. Special Prosecutors v. Judges, Belmont Cty. Court of Common Pleas* (1978), 55 Ohio St.2d 94, 97-98. Feaster filed his motion to withdraw his plea after his direct appeal in this Court, and this Court's affirmance. See *In re T.F.*, 9th Dist. No. 23979, 2008-Ohio-3106. Under ordinary circumstances, therefore, Feaster would not have been permitted to seek the vacation of his plea. *Ketterer* at ¶61. The question is whether this Court should deviate from or adhere to the foregoing rule of law, given the evolution of the post-release control doctrine and the cases the Supreme Court has issued during the pendency of this matter.

{¶20} The majority relies upon *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, to reach the result in this matter. The syllabus in *Sarkozy* reads as follows:

> "1. If a trial court fails during a plea colloquy to advise a defendant that the sentence will include a mandatory term of post[-]release control, the defendant may dispute the knowing, intelligent, and voluntary nature of the plea either by filing a motion to withdraw the plea or upon direct appeal.

> "2. If the trial court fails during the plea colloquy to advise a defendant that the sentence will include a mandatory term of post[-]release control, the court fails to comply with Crim.R. 11, and the reviewing court must vacate the plea and remand the cause." *Sarkozy* at paragraphs one and two of the syllabus.

Thus, the Supreme Court recognized that both motions to withdraw and direct appeals are proper vehicles for relief in terms of correcting a post-release control error that occurs at the plea stage and that a court is required to vacate a plea flowing from a complete failure to advise a defendant

of post-release control at the time he enters his plea. Id. The problem with the majority's reliance upon *Sarkozy* is that it is procedurally distinguishable from this case.

**{¶21}** Much like Feaster, Sarkozy pleaded guilty to multiple charges in the absence of any post-release control notification. Id. at ¶3-4. Sarkozy then filed a pre-sentence motion to withdraw his guilty plea on grounds other than post-release control. The court denied his motion and imposed his sentence, which included post-release control. On direct appeal, Sarkozy challenged his plea on the basis that it was not knowingly, intelligently, and voluntarily entered in the absence of a post-release control notification. Id. at ¶6. The Supreme Court agreed and vacated his plea pursuant to that determination. Id. at ¶25-26.

**{¶22}** *Sarkozy* does not run afoul of the rule of law set forth in *Ketterer* because Sarkozy did not wait until after "an appeal and an affirmance by [an] appellate court" to challenge his plea. *Ketterer* at ¶61. Sarkozy challenged the validity of his plea on direct appeal. Unlike Sarkozy, Feaster waited until September 11, 2009 to file his motion to withdraw; almost three months after this Court affirmed the lower court's judgment and while Feaster's appeal was pending with the Supreme Court. The cases flowed from distinct procedural paths, and I do not believe that the Supreme Court intended for *Sarkozy* to upset the rule in *Ketterer* and *Special Prosecutors*. Quite simply, although *Sarkozy* recognized that a defendant may challenge his plea in either a motion to withdraw or a direct appeal when faced with a post-release control error at the plea stage, it did not hold that a defendant may do both. See *Sarkozy* at syllabus. The choice between a direct appeal and a motion to withdraw is one left to the individual defendant. *Sarkozy* never stood for the proposition that a defendant who has lost on direct appeal still may challenge his plea, subsequently, in a motion to withdraw his plea. On its face, *Sarkozy* is inapplicable to Feaster.

**{¶23}** While not explicitly set out, the majority presumably concludes that *Sarkozy* applies to Feaster because, by operation of law, he was placed in a position where it was as if he never had a direct appeal. Two distinct factors contribute to this result: (1) the fact that the Supreme Court vacated Feaster's sentence after this Court's affirmance on direct appeal; and (2) the fluctuating nature of the law regarding post-release control at the time of these events. Yet, there are at least two problems with any approach that relies upon the foregoing factors. The first is that after *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, we now know that the Supreme Court would not have vacated Feaster's entire sentence as void. The second is that this Court has held on several occasions that, given *Fischer*, it would be improper to defer to a vacation ordered prior to *Fischer's* issuance.

**{¶24}** The Supreme Court vacated Feaster's sentence on September 8, 2009, slightly more than three months before it issued *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434. At the time the Court vacated his sentence, the law of this State was that a defect in post-release control resulted in a void sentence. See *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250. Previously, the Supreme Court had issued case law rejecting sentencing-packaging and providing that, even if a portion of an offender's sentence required vacation, principles of res judicata would not permit an appellate court to vacate his entire sentence if the defendant only had appealed from one component of it. *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, at paragraph three of the syllabus ("An appellate court may modify, remand, or vacate only a sentence for an offense that is appealed by the defendant and may not modify, remand, or vacate the entire multiple-offense sentence based upon an appealed error in the sentence for a single offense."). *Saxon* held that "[w]hen a defendant fails to appeal the sentence for a certain offense," res judicata bars the defendant from "tak[ing] advantage of an error in the sentence for

an entirely separate offense to gain a second opportunity to appeal upon resentencing." *Saxon* at ¶19. The concept of res judicata, therefore, was alive and well with regard to sentencing errors at the time of *Saxon*.

{¶25} A year later, the landscape sharply changed with the issuance of *Bezak*. *Bezak* held that "[w]hen a defendant is convicted of or pleads guilty to one or more offenses and post[-]release control is not properly included in a sentence for a particular offense, the sentence for that offense is void." *Bezak* at syllabus. Accord *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, syllabus. The Supreme Court's characterization of defective post-release control sentences as void, rather than voidable, ultimately led this Court to conclude that post-release control errors actually created jurisdictional defects and limited our ability to take any other action in such a case other than to vacate the void sentence. See, e.g., *State v. Bedford*, 9th Dist. No. 24431, 2009-Ohio-3972. As such, for a distinct period of time, this Court vacated sentences on appeal without addressing any further errors and remanded those matters to the trial court for further proceedings. See, e.g., *State v. Harville*, 9th Dist. No. 08CA009501, 2009-Ohio-5420. Another byproduct of our decision to vacate and remand in those cases was that, when the cases returned to this Court on appeal from our remand, we were forced to revisit their merits even if the defendant at issue had already had one or more prior appeals. See, e.g., *State v. Greenleaf*, 9th Dist. No. 24983, 2010-Ohio-2863. We concluded that res judicata was inapplicable to those cases because the doctrine could never apply to decisions stemming from void judgments; it could only ever apply after a valid, final judgment of conviction was entered. Id. at ¶8-13.

{¶26} In December 2009, the Supreme Court issued *Singleton*. *Singleton* marked a partial retreat from the Court's post-release control precedent based on the legislature's enactment of R.C. 2929.191. The Court continued to adhere to its position that pre-July 11, 2006

sentences were void if based on a defective post-release control notification, but held that sentences imposed on or after July 11, 2006 were not void. *Singleton* at ¶35. Those sentences merely contained errors that were correctable by way of R.C. 2929.191. Id. at paragraph two of the syllabus. Consequently, a divide emerged between pre-July 11, 2006 sentences and those imposed on or thereafter. The divide remained until the following year.

{¶27} In December 2010, the Supreme Court issued *Fischer*. *Fischer* explicitly overruled the portion of *Bezak* requiring a de novo sentencing for post-release control defects and re-embraced the concept of severability lost after *Saxon*. *Fischer* at ¶15-28. Specifically, the Supreme Court held that a post-release control defect does not void the entirety of an offender's sentence. Id. at ¶17. Instead, the post-release control component of an offender's sentence "is fully capable of being separated from the rest of the sentence as an independent component, and *** [t]he remainder of the sentence *** remains valid under principles of res judicata." (Internal quotations omitted.) Id. The Court further held that res judicata applies to convictions that contain post-release control errors. Id. at paragraph three of the syllabus. *Fischer* specified that "a direct appeal from a resentencing *on remand from an appeal finding that a sentence was void*" is not an offender's first direct appeal as of right. (Emphasis added.) Id. at ¶32. In other words: (1) an offender can have a final judgment of conviction in spite of a post-release control error; (2) because those judgments are valid, appellate courts had/have jurisdiction to consider their merits; and (3) an offender cannot relitigate the merits of his underlying conviction in the event an appellate court previously determined his sentence was void and remanded the case for resentencing. Id. at ¶32. The scope of any appeal after resentencing will be "limited to issues arising at the resentencing hearing." Id. at paragraph four of the syllabus.

{¶28} In my view, *Fischer* largely sounded the death knell in the realm of post-release control. The Supreme Court issued *Fischer* knowing full well that it had vacated multiple sentences based on its former post-release control law, and that appellate courts in general had done the same. Had the majority in *Fischer* wished to limit the opinion to cases in which no vacation had occurred, they certainly could have done so. Indeed, *Singleton* specifically included a footnote, providing that the opinion "should not be interpreted to require further judicial action in cases" where trial courts had already performed de novo sentencing hearings in post-July 11, 2006 sentences based on the Supreme Court's prior case law. *Singleton* at fn.1. No such limitation exists in *Fischer*. On the contrary, the opinion indicates that the law therein applies to cases where an offender appeals after a "remand from an appeal finding that a sentence is void." *Fischer* at ¶32. It would be an odd result for an appellate court to conclude that a sentence is void, but fail to vacate it. Certainly, this Court vacated all the sentences it found to be void due to post-release control errors prior to *Fischer's* issuance. Moreover, the Supreme Court did not say that res judicata applies when an offender appeals again after a remand from an appeal finding that *a portion of* a sentence is void. The opinion refers to a finding that a "sentence" is void, not a "portion of a sentence." Id. Presumably, therefore, *Fischer* applies even to those cases where either the Supreme Court or this Court vacated an entire sentence under the pre-*Fischer* state of the law.

{¶29} The Supreme Court vacated Feaster's sentence shortly before it issued *Singleton* and over a year before it issued *Fischer*. The passage of even a few months would have changed this result, as these incidents occurred after July 11, 2006, and Feaster's sentence would not have been vacated even under *Singleton*. See *Singleton* at paragraph two of the syllabus. Even so, I do not believe that the vacation of Feaster's sentence should dictate the result in this matter. As

previously set forth, I read *Fischer* as a stop-bar to the ripple-effect created by the categorization of sentences as void in their entirety due to post-release control defects. Further, I read the opinion to apply retroactively, as it does not indicate otherwise. See *Parks v. Rice*, 7th Dist. Nos. 02CA197 & 02CA198, 2004-Ohio-2477, at ¶19-20. I cannot agree with any conclusion that, by operation of law, it is as if Feaster had no sentence and has never had a direct appeal.

{¶30} Admittedly, this Court has not always been consistent in its post-release control decisions. See *State v. Wheeler*, 9th Dist. No. 25183, 2011-Ohio-1521, at ¶8-12 (Belfance, J., concurring in judgment only). We have issued cases, however, where we have applied *Fischer* even though we previously vacated an offender's sentence and thereby disregarded our prior vacation. See *State v. Johnson*, 9th Dist. No. 25104, 2011-Ohio-436; *Wheeler*, supra; *State v. Kiley*, 9th Dist. No. 10CA009757, 2011-Ohio-1156. In *Kiley*, we specifically identified *Fischer* as an intervening decision of the Supreme Court that provides an exception to the law of the case doctrine, such that we would not consider our mandate to vacate to be the law of the case. *Kiley* at ¶33. I agree with that logic and would not adhere to any pre-*Fischer* mandate regarding the vacation of Feaster's sentence.

{¶31} The record reflects that the trial court at least had the benefit of *Singleton* at the time it issued its decision in this matter. That is, the court applied a post-sentence standard to Feaster's motion to withdraw because it concluded that only the post-release control portion of his sentence was void. To do so, it had to disregard the mandate, vacating Feaster's sentence. The problem is that, once the trial court correctly concluded that Feaster still had a valid sentence, it did not then concluded that it lacked jurisdiction to consider his motion to withdraw. As set forth at the beginning of this dissent, Crim.R. 32.1 "does not vest jurisdiction in [a] trial court to maintain and determine a motion to withdraw [a] guilty plea subsequent to an appeal and

an affirmance by the appellate court." *Ketterer* at ¶61. Pursuant to *Fischer*, Feaster had a valid judgment of conviction despite the post-release control error in his sentence. He also had a direct appeal, in which this Court affirmed the lower court's judgment. Pursuant to *Fischer*, Feaster's prior appeal was not a nullity. Because Feaster sought to withdraw his plea "subsequent to an appeal and affirmance by [an] appellate court," the trial court lacked jurisdiction to consider his motion. Id. As such, while I disagree with the trial court's rationale, I would conclude that the trial court's ultimate decision not to allow Feaster to withdraw his plea is correct and that the court properly resentenced him pursuant to R.C. 2929.191. Because I would overrule Feaster's sole assignment of error and affirm the trial court's judgment, I respectfully dissent.

APPEARANCES:

JANA DELOACH, Attorney at Law, for Appellant.

ROBERT C. MEEKER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.