[Cite as *In re D.J.*, 2018-Ohio-569.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: D.J.

C.A. No.    28472
    28473

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DL 11 11 2532

DECISION AND JOURNAL ENTRY

Dated: February 14, 2018

HENSAL, Presiding Judge.

{¶1}  D.J. appeals judgments of the Summit County Court of Common Pleas, Juvenile Division, that invoked the adult portion of his serious youthful offender dispositional sentence and sentenced him to life imprisonment with the possibility of parole after 25 years. For the following reasons, this Court affirms.

I.

{¶2}  When D.J. was 15, he anally raped his 3-year-old sister, which caused injuries that resulted in her death. The juvenile court adjudicated him guilty of rape and felony murder and designated him a serious youthful offender. It committed him to the Ohio Department of Youth Services (DYS) and stayed his adult sentence of life imprisonment with the possibility of parole after 25 years. D.J. appealed his adjudication. He also petitioned for post-conviction relief.

**{¶3}** D.J. behaved well during his commitment. He completed high school, took college classes, began an apprenticeship, and even helped tutor others. In light of his ongoing legal proceedings, however, he declined to enroll in sex offender treatment. Eventually, he voluntarily dismissed his appeal and withdrew his petition.

**{¶4}** Following the end of D.J.'s appeal and petition, the juvenile court wrote that his sex offender treatment would begin shortly. D.J. did not decide to enter the program, however, until nine months before he was going to turn 21. Despite attending and participating in the first part of the program, D.J. did not meet its goals because he could not identify the triggers for his conduct. He, therefore, could not continue into the second part of the program, which helps participants develop strategies to manage their triggers.

**{¶5}** Approximately 50 days before D.J.'s twenty-first birthday, the State moved for the juvenile court to invoke the adult portion of D.J.'s sentence. Following an evidentiary hearing, the juvenile court granted its motion, finding that D.J., by failing to complete sex offender treatment, engaged in conduct that poses a substantial risk to the safety of the community. The court also found that he could not be rehabilitated before turning 21. It subsequently imposed D.J.'s adult sentence of life imprisonment with the opportunity for parole after 25 years. D.J. has appealed, assigning five errors.

## II.

### ASSIGNMENT OF ERROR I

THE STATE CANNOT INITIATE THE REQUEST TO INVOKE THE ADULT PORTION OF A CHILD'S SYO WHEN THE CHILD IS IN DYS'S INSTITUTIONAL CUSTODY, IN VIOLATION OF R.C. 2152.14(A).

**{¶6}** D.J. argues that the State's motion to invoke was improper under Revised Code Section 2152.14(A). That section provides, in part, that "[t]he director of youth services may

request the prosecuting attorney of the county in which is located the juvenile court that imposed a serious youthful offender dispositional sentence * * * to file a motion with that juvenile court to invoke the adult portion of the dispositional sentence * * *."  According to D.J., under the statute, only the director of DYS can initiate the request to invoke the adult part of the dispositional sentence for a serious youthful offender.  Here, however, the prosecutor sent a letter to DYS, requesting that it join in a motion to invoke.  D.J. contends that DYS's staff was actually preparing him for release into the community until the prosecutor interfered in the process.

{¶7}  Section 2152.14 does not provide any guidance for how the director of DYS should decide whether to request that the prosecuting attorney move for the juvenile court to invoke the adult part of a dispositional sentence.  The statute's only requirements are that the juvenile be at least 14 years old, that the juvenile be in the custody of or has escaped custody of DYS, and that the juvenile be serving the juvenile part of a serious youthful offender dispositional sentence.  R.C. 2152.14(A)(2).  D.J. has not pointed to any language in Section 2152.14 that prohibits the prosecution from attempting to influence the director's exercise of discretion under Section 2152.14(A).  D.J.'s first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE JUVENILE COURT ERRED WHEN IT DETERMINED THAT D.J. ENGAGED IN CONDUCT THAT CREATES A SUBSTANTIAL RISK TO THE SAFETY AND SECURITY OF THE INSTITUTION, COMMUNITY, OR THE VICTIM IN THE ABSENCE OF CLEAR AND CONVINCING EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; ARTICLE 1, SECTION 16 , OHIO CONSTITUTION; AND, R.C. 2152.14(E).

{¶8}  D.J. next argues that there was insufficient evidence to support the juvenile court's findings under Section 2152.14(E)(1).  That section provides:

The juvenile court may invoke the adult portion of a person's serious youthful offender dispositional sentence if the juvenile court finds all of the following on the record by clear and convincing evidence:

(a) The person is serving the juvenile portion of a serious youthful offender dispositional sentence.

(b) The person is at least fourteen years of age and has been admitted to a department of youth services facility, or criminal charges are pending against the person.

(c) The person engaged in the conduct or acts charged under division (A), (B), or (C) of this section, and the person's conduct demonstrates that the person is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction.

R.C. 2152.14(E)(1). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. The conduct referred to in Section 2152.14(E)(1)(c) includes that "[t]he person has engaged in conduct that creates a substantial risk to the safety or security of the institution, the community, or the victim." R.C. 2152.14(A)(2)(b).

{¶9} The juvenile court found that D.J. had been defiant about his need to engage in sex offender treatment and that he had failed to complete such treatment. It also found that, following the exhaustion of his appeals, D.J. had 29 months to complete sex offender treatment, which typically takes between 9 and 18 months. The court found that D.J. delayed entering the program and inquired at one point about whether he could fake his treatment. It also found that, although D.J. eventually began the treatment program, he could not understand what he needed to do to prevent a relapse of his conduct. In conclusion, the court found that, "[a]bsent an understanding of his triggers, his cycle and what he needs to do to refrain from similar offenses, the Court finds that [D.J.] has engaged in conduct that poses a[ ] substantial risk to the safety of the community."

{¶10} The State presented testimony that D.J. was disengaged from his emotions. He resisted taking responsibility for harming his sister and failed to complete an appropriate victim apology letter, writing it to his parents instead of his sister. Although he could understand the offense cycle academically, he was unable to plug his own offense into the cycle to understand what triggered his offense. Specifically, he was unable to break down the series of events that led up to the offense, including the things that caused him to start thinking about doing it and the thinking errors that he made along the way. The State's witnesses testified that D.J.'s effort during sex offender treatment sessions was limited and that his participation was minimal. Because of his failure to master the first phase's skills and material, he could not progress into the second phase of the program where he would have developed a relapse prevention plan. The staff member who conducted D.J.'s class was concerned about D.J.'s ability to function in all aspects of his life back in the community without an understanding of his triggers and without a relapse prevention plan in place.

{¶11} The word "conduct" is not defined in Chapter 2152, but it commonly refers to someone's "[p]ersonal behavior, whether by action or inaction[.]" *Black's Law Dictionary* 315 (8th Ed.2004). D.J. intentionally waited until only 9 months before he turned 21 to begin sex offender treatment, which was too late for him to finish it in light of his minimal participation and emotional detachment from his offense. Upon review of the record, we conclude that there was sufficient evidence for the juvenile court to find by clear and convincing evidence that D.J., in failing to complete sex offender treatment, engaged in conduct that created a substantial risk to the safety of the community.

{¶12} D.J. also argues that the court's finding was against the manifest weight of the evidence. We apply the same manifest weight standard in both criminal and civil cases. When

conducting a manifest weight review, we are required to "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶13} In addition to his sufficiency argument, D.J. argues that the juvenile court's findings were against the manifest weight of the evidence because he exhibited excellent behavior at DYS, DYS's staff was preparing for his release into the community, and there was no evidence that, without treatment, he presented a great risk of recidivism. We note that, even if most of DYS's staff, generally, was preparing D.J. for his release into the community, the instructor of D.J.'s sex offender treatment class testified that he was concerned about D.J.'s ability to function back in the community because he did not understand his triggers and did not have a relapse prevention plan in place. Upon careful review of the record, we conclude that the juvenile court's findings were not against the manifest weight of the evidence. D.J.'s second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE MANDATORY SENTENCING SCHEME IN R.C. 2971.03 IS UNCONSTITUTIONAL BECAUSE IT DOES NOT PERMIT THE JUVENILE COURT TO MAKE AN INDIVIDUALIZED DETERMINATION ABOUT D.J.'S SENTENCE OR THE ATTRIBUTES OF HIS YOUTH, IN VIOLATION

OF HIS RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT, AS GUARANTEED BY THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION; AND, ARTICLE I, SECTION 9, OHIO CONSTITUTION.

{¶14} D.J. next argues that his adult sentence violates his right to be free from cruel and unusual punishment because the juvenile court was not allowed to consider his age or other mitigating factors in determining his sentence. Because D.J. committed rape and murder, the juvenile court was required to impose an adult sentence of 25 years to life imprisonment. R.C. 2152.13(D)(1)(a); R.C. 2971.03(B)(1)(c).

{¶15} The State argues that D.J. forfeited his constitutional argument because he did not raise it at the time the trial court initially imposed his sentence. It points out that in *In re Feaster*, 9th Dist. Summit No. 25395, 2011-Ohio-4222, this Court recognized that, when a juvenile court designates a serious youthful offender, it imposes an actual prison sentence, even though the sentence is stayed. *Id.* at ¶ 11-12. The State also argues that D.J.'s argument was available to him, noting that the United States and Ohio Supreme Court decisions that D.J. relies on pre-date his disposition as a serious youthful offender.

{¶16} D.J. argues that he should be permitted to raise his constitutionality argument because his adult prison sentence did not become a reality until the juvenile court imposed it in November 2016. He also notes that Section 2152.14(E)(2) authorizes a juvenile court to modify the adult portion of a person's serious youthful offender sentence at the time the court invokes it. He further notes that, in *Feaster*, this Court allowed Tyree Feaster to withdraw his plea agreement after the State moved to invoke the adult portion of his sentence because the juvenile court had not properly advised him of post-release control. *Id.* at ¶ 13.

{¶17} Under the "doctrine of res judicata, a valid final judgment on the merits bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the

subject matter of the previous action." *State v. Hartman*, 9th Dist. Medina No. 15CA0090-M, 2017-Ohio-1089, ¶ 23, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995). "Res judicata applies to any issue that was raised or could have been raised in a criminal defendant's prior appeal from his conviction." *Id.*, citing *State v. Perry*, 10 Ohio St.2d 175, 180 (1967). "The doctrine serves to preclude a defendant who has had his day in court from seeking a second on that same issue. In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard." *Id.*, quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 18.

{¶18} The juvenile court originally imposed D.J.'s adult sentence in 2013, but it stayed the sentence pending D.J.'s completion of his juvenile disposition. On appeal from that entry, D.J. could have argued that the adult sentence the court imposed was unconstitutional. His argument, therefore, is barred under the doctrine of res judicata. Section 2152.14(E)(2) only allows a juvenile court to modify an adult sentence if the sentence is not mandatory, but D.J.'s sentence was mandatory. Accordingly, it does not change this Court's res judicata analysis. *Feaster* also does not support D.J.'s argument because it involved whether Mr. Feaster could withdraw his plea after the State conceded that his sentence was void. *Feaster* at ¶ 3. D.J.'s third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE JUVENILE COURT ERRED WHEN IT CLASSIFIED D.J. AS A TIER III JUVENILE OFFENDER REGISTRANT BECAUSE IT LACKED JURISDICTION TO ISSUE THE ORDER, IN VIOLATION OF 2151.14(F) AND *IN RE J.B.*, 134 OHIO ST.3D 538, 2012-OHIO-5675, 983 N.E.2D 1295, ¶1.

{¶19} D.J. next argues that the juvenile court did not have authority to classify him as a Tier III juvenile offender registrant because it did not classify him until after it invoked the adult portion of his serious youthful offender dispositional sentence. In support of his argument, D.J. cites *State ex rel. Jean-Baptist v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697.

{¶20} In *Kirsch*, the Ohio Supreme Court held that a juvenile court cannot classify a child as a juvenile offender registrant under Section 2152.83 after the child has been released from a secured facility, noting that the statute requires the classification happen "at the time of the child's release." *Id*. at ¶ 32, citing R.C. 2152.83(A)(1). Here, the juvenile court adjudicated D.J. as a Tier III sex offender in the same entry that ended D.J.'s commitment to DYS. We, therefore, conclude that the juvenile court's classification of D.J. was not error under *Kirsch*.

{¶21} D.J. also argues that the juvenile court lost jurisdiction to classify him as a juvenile offender registrant once it invoked the adult portion of his serious youthful offender dispositional sentence. There is no language in Section 2152.14, however, concerning juvenile offender registration and no language in Section 2152.83 that prohibits a juvenile court from classifying a child if the adult portion of the child's serious youthful offender disposition has been invoked. The juvenile court has jurisdiction "[t]o conduct the hearings, and to make the determinations, adjudications, and orders authorized or required under sections 2152.82 to 2152.86 and Chapter 2950. of the Revised Code regarding a child who has been adjudicated a delinquent child[.]" R.C. 2151.23(A)(15). D.J. was still a "child" at the time of the juvenile court's classification order because he was under 21 and had been adjudicated a delinquent child before turning 18. R.C. 2152.02(C)(1), (6). We, therefore, conclude that D.J. has not demonstrated that the juvenile court lacked jurisdiction to classify him as a Tier III juvenile offender registrant. D.J.'s fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE JUVENILE COURT ERRED WHEN IT CLASSIFIED D.J. AS AN ADULT TIER III SEX OFFENDER REGISTRANT, PURSUANT TO THE ADULT STATUTES, IN VIOLATION OF R.C. 2152.82; 2152.83; 2152.84; 2152.85; AND, 2950.01(G), (M).

{¶22} D.J.'s final argument is that the juvenile court incorrectly classified him as an adult sex offender registrant. He argues that those classifications do not apply to children, including those designated as a serious youthful offender. Specifically, D.J. argues that the adult registrant provisions only apply to those who have been convicted of an offense, and his adjudication as a delinquent child is not the same as a conviction.

{¶23} "[A] trial court speaks only through its journal entries." *State v. Leason*, 9th Dist. Summit No. 25566, 2011-Ohio-6591, ¶ 8. In its entry, the juvenile court wrote that D.J. "has been convicted of a sexually-oriented offense" even though he, instead, had been adjudicated delinquent for committing rape and murder. The court went on, however, to order D.J. "to be adjudicated a Tier III Sex Offender * * *." The definition of a "Tier III sex offender * * *" includes "[a] sex offender who * * * has been adjudicated a delinquent child for committing any sexually oriented offense and who a juvenile court, pursuant to section 2152.82, 2152.83, 2152.84, or 2152.85 * * * classifies a tier III sex offender * * * relative to the offense." R.C. 2950.01(G)(3). Although the juvenile court used the word "adjudicate" in its entry instead of "classify," the difference between the two words in this context is not significant. In addition, D.J. has not identified any difference in the requirements placed on a Tier III sex offender who receives that designation automatically for being convicted of certain offenses as an adult and juveniles who receive that designation under Section 2950.01(G)(3). Accordingly, upon review of the juvenile court's entry, we conclude that any error in the court's word choice was harmless. D.J.'s fifth assignment of error is overruled.

III.

**{¶24}** D.J.'s assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

**{¶25}** The landscape regarding juvenile justice has changed dramatically in the last ten years. This case is an example of the difficulty in attempting to apply juvenile and adult rehabilitative statutes and theories when a child commits a serious offense. I encourage the Supreme Court and legislature to address these matters to provide necessary guidance to the juvenile courts.

<u>APPEARANCES:</u>

CHARLYN BOHLAND, Assistant State Public Defender, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.