[Cite as *State v. Miller*, 2024-Ohio-4520.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JEROME T. MILLER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0117**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CR 00616

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova,* Mahoning County Prosecutor*, Atty. Edward A. Czopur,* Assistant Mahoning County Prosecutor*,* for Plaintiff-Appellee and

*Atty. Mark J. Lavelle*, for Defendant-Appellant.

Dated:  September 11, 2024

**Robb, P.J.**

{¶1} Appellant, Jerome T. Miller, appeals the November 1, 2023 judgment convicting him of multiple drug charges. Appellant pled guilty to six drug trafficking charges. He was convicted by a jury of the remaining four drug possession charges.

{¶2} Appellant argues on appeal that the four drug possession counts are against the manifest weight of the evidence and the trial court erred by failing to grant his motion for a directed verdict of acquittal. He also contends the court erred by allowing the state to introduce evidence during trial about the drug trafficking charges to which he pled guilty. For the following reasons, we affirm.

Statement of the Facts and Case

{¶3} Appellant was indicted via secret indictment and charged with ten drug offenses, six trafficking charges and four possession charges. (October 20, 2022 Indictment.) Appellant failed to appear at the arraignment hearing, and the court issued a warrant for his arrest. (November 1, 2022 Judgment.)

{¶4} He subsequently entered a plea of not guilty and bond was set at $100,000. (June 28, 2023 Judgment.)

{¶5} Before trial commenced, Appellant pled guilty to the first six charges, the six drug trafficking charges. These charges consisted of: count one, trafficking in a fentanyl related compound in violation of R.C. 2925.03(A)(1)(C)(9)(a), a fifth-degree felony; count two, trafficking in cocaine, a fifth-degree felony in violation of R.C. 2925.03(A)(1)(C)(4)(a); count three, trafficking in a fentanyl related compound, a fifth-degree felony in violation of R.C. 2925.03(A)(1)(C)(9)(a); count four, trafficking in cocaine, a fifth-degree felony in violation of R.C. 2925.03(A)(1)(C)(4)(a); count five, trafficking in cocaine, a fourth-degree felony in violation of R.C. 2925.03(A)(1)(C)(4)(b); and count six, trafficking in a fentanyl related compound, a fourth-degree felony in violation of R.C. 2925.03(A)(1)(C)(9)(b). (August 21, 2023 Guilty Plea.)

{¶6} The state filed a notice of intent to introduce other acts evidence. The state sought to introduce evidence detailing the three controlled drug buys which resulted in Appellant's guilty plea to the first six charges. The state urged the court to allow the introduction of evidence depicting the controlled drug buys. It argued this evidence

demonstrates Appellant stored cocaine at his mother's home and also necessarily shows his knowledge the drugs were located there to establish constructive possession. (Trial Tr. 265- 273.)

{¶7} The defense opposed the state's motion, but the court allowed the evidence. (Trial Tr. 273- 279.)

{¶8} Trial proceeded on the remaining four charges, and Appellant was found guilty of each. These charges included: count seven, possession of cocaine, a first-degree felony in violation or R.C. 2925.11(A)(C)(4)(f), with a finding that the cocaine or compound was in an amount equaling or exceeding 100 grams; count eight, possession of a fentanyl related compound, a second-degree felony in violation of R.C. 2925.11(A)(C)(11)(d), with a finding that the compound was in an amount equaling or exceeding ten grams but less than 20 grams; count nine, possession of a fentanyl related compound, a fourth-degree felony in violation of R.C. 2925.11(A)(C)(11)(b); and count ten, aggravated possession of drugs, a third-degree felony in violation of R.C. 2925.11(A)(C)(1)(b), with a finding that the amount of hydrocodone equaled or exceeded the bulk amount but was less than five times the bulk amount. (August 28, 2023 Judgment.)

{¶9} The evidence at trial showed the following.

{¶10} Officer Ryan testified for the state. He is a member of the Mahoning Valley Drug Task Force. He explained how higher level drug dealers use multiple locations to store different aspects of their "business" to prevent robberies and deter detection. Ryan described a typical dealer as having three locations: one to keep their money, one with a large quantity or "stash" of illegal drugs, and the third he referred to as a "flop house" where "sales of smaller increments [of illegal drugs] are typically conducted." (Trial Tr. 313-316.)

{¶11} Ryan also identified common slang terms for illegal substances. He said "boy" is typically heroin or fentanyl and "work" is crack cocaine or cocaine. (Trial Tr. 318.)

{¶12} Ryan explained how he became involved with the confidential informants in this case. He said both were involved in a traffic stop he conducted in which S.K. was charged with possession of heroin and drug abuse instruments. These same two informants were later charged with criminal trespass. In an effort to reduce or eliminate

their criminal charges, the informants, S.K. and R.G., performed three controlled drug buys.

{¶13} The controlled buys are detailed in written police surveillance reports and were recorded. The state introduced copies of the written reports, audio and video recordings of the three drug buys, and still photographs or screenshots taken from the video recordings. Each of the three drug sales involved the same seller and informants. The buys occurred on October 18, 2021, October 27, 2021, and November 8, 2021. (Trial Tr. 313.)

{¶14} The informants contacted Appellant, who they referred to as "Rome." For the first buy, Rome directed the informants to a home on Franklin Avenue. The informants purchased heroin, crack cocaine, and marijuana from Appellant. The transaction occurred entirely at the Franklin Avenue house belonging to Appellant.

{¶15} During the second controlled buy, the informants went to the Franklin Avenue home to purchase the same three substances, heroin, crack cocaine, and marijuana. They went to the residence unannounced and without contacting Appellant in advance.

{¶16} After telling Appellant what they wanted to purchase, he told them he had to "go up the street to get the work" and that he needed a scale too. They all went to the house on Cameron Avenue that belonged to Appellant's mother. Appellant entered the home while the informants waited in the garage. Ryan described Appellant as entering the home through a front door and exiting through a man door into the garage. When Appellant exited the home, the informants completed the transaction and left. (Trial Tr. 343-346.)

{¶17} For the third controlled buy, the informants called Appellant, and he told them to go to his Franklin Avenue residence. The transaction occurred completely at this location, and they purchased "hard" meaning crack cocaine; boy or heroin; and weed meaning marijuana. (Trial Tr. 355-356.)

{¶18} Ryan testified that the motor vehicle registrations associated with four vehicles linked to Appellant list his mother's Cameron Avenue address. Further, the county auditor's website listed the tax mailing address for Appellant's Franklin Avenue home as his mother's Cameron Avenue address. (Trial Tr. 325-326, 341, 352, 364.)

Appellant also owned a second home in the city, but none of the controlled drug purchases occurred at this third location.

{¶19} After the three drug purchases, the police obtained warrants to search Appellant's Franklin Avenue residence and his mother's Cameron Avenue home. The warrants were executed on December 21, 2021.

{¶20} Appellant was not at either home on the date of the searches. The police found several pieces of mail sent to Appellant at the Cameron Avenue address, including a notice of suspension dated November 3, 2021 issued to Appellant by the Ohio BMV, a fireworks flyer and coupon addressed to Appellant that expired April 30, 2022. (State's Ex. 138, 147.)

{¶21} On cross-examination, Ryan agreed the police did not secure any fingerprint or DNA evidence from the Cameron Avenue home.

{¶22} Officer Altier also testified for the state. Altier said the officers found men's clothing and personal care items in the upstairs bedroom of the Cameron Avenue home during the search. The police also found a UPS box addressed to Appellant in the upstairs bedroom, but it was dated 2017. He said the first floor bedroom closet contained women's clothing. (Trial Tr. 407-444.)

{¶23} Officer Brooks testified that he found a large quantity of powder cocaine in a bag inside a washing machine in the basement of the Cameron Avenue home. (Trial Tr. 455-458.)

{¶24} One of the informants, R.G., testified for the state. He said he has four children with his girlfriend, S.K., who was the other informant. She had given birth to their fourth child the day before R.G.'s testimony.

{¶25} R.G. stated that S.K. had a crack cocaine and heroin addiction. At the time of trial, he said they both had been sober for three months. He recalled that he and S.K. were charged by Officer Ryan, who suggested they "work something out," meaning they work with the task force to get their charges dismissed. In addition to getting their criminal charges dropped, R.G. said he and S.K. also received approximately $450-$550 worth of gas and groceries while cooperating with police. (Trial Tr. 491-496.)

{¶26} R.G. recounted the three controlled drug buys. He agreed that "work" is slang for crack cocaine. He stated on the date of the second transaction, Appellant did

not have the "work" at the house on Franklin, so they all went to the house on Cameron. R.G. said Appellant entered the Cameron Avenue house and returned with the cocaine. They completed the sale in the garage. (Trial Tr. 497-515.)

{¶27} R.G. testified on cross-examination that he and S.K. were homeless and living in a van at the time of these recorded transactions. He agreed he was using crack cocaine daily and buying it at least one to two times per day. He did not use powder cocaine, only crack. R.G. listened to the audio of the recording of the second drug buy and testified that Appellant said he needed to get a scale and the "work" from the Cameron house that day. It took him and S.K. about five minutes to get to the Cameron house, but R.G. agreed that it took Appellant a lot longer to get there. R.G. agreed on redirect that crack cocaine is made by cooking powder cocaine, but he has never done it. R.G. watched the second drug buy video at least five times before trial, and he is sure that Appellant states they need to go to the Cameron house to get the "work" and scale. (Trial Tr. 222-527.)

{¶28} There was another person present that day in the Cameron Avenue garage, referred to as "Double D." R.G. denies ever purchasing drugs from him. (Trial Tr. 526.)

{¶29} At the close of the state's evidence, defense counsel moved for an acquittal. He urged the court to find there was no evidence showing Appellant in possession of the drugs found at the Cameron Avenue home and that the date of the controlled buy and the date of the search were too far apart to link. The defense motion was denied.

{¶30} The defense presented the testimony of Appellant's mother, Glenda Miller. Glenda testified that she has owned the Cameron Avenue residence since 1990, and Appellant used to stay there. She said Appellant's room was on the first floor of the home. Glenda said Appellant was not staying there in 2021 at the time of the drug buys. (Trial Tr. 548-549.)

{¶31} Glenda also said her brother's family and friends would sometimes stay with her and she also had a lot of break-ins. Glenda said her other son stayed there at times and her grandchildren too. She said "Double D" was her neighbor, and he would help her. He came to check on her after the police searched her home. He helped fix her door. Glenda said her home did not have an operable stove or microwave at the time of the

controlled buys. She also said she did not see Appellant during the months of October, November, or December in the year 2021. (Trial Tr. 550-556.)

{¶32} On cross-examination, Glenda also said Appellant does not sell drugs from her home. She denied that Appellant can "come and go" as he pleases. He used to be able to do this. However, she did agree that Appellant knows the code for the keypad entry into the home. She said she never goes upstairs or in her basement. She said she does not use her washing machine because she did not have a hot water tank. She uses the laundromat. She denied knowing who put the drugs in her basement. (Trial Tr. 560-578.)

{¶33} Appellant also testified. He explained he only sold small quantities of drugs. He denied remembering why he had the informants go to his mother's house on Cameron Avenue on the date of the second buy. He thinks it was so he could get a scale. Appellant also denied knowing there were 1,808 grams of cocaine in his mother's home. (Trial Tr. 599-604.)

{¶34} Appellant was convicted of the four drug possession charges. He was sentenced on October 25, 2023. He raises three assignments of error on appeal.

Constructive Possession of Drugs

{¶35} We address Appellant's first and second assignments of error collectively. His first assignment asserts:

"The Appellant's conviction for possession of drugs in counts seven (7) through ten (10) is not supported by the manifest weight of the evidence, and the trial court erred by not granting the Rule 29 directed verdict of acquittal."

{¶36} Appellant's second assigned error contends:

"The trial court erred as a matter of law by allowing the case to go to the jury on a theory of constructive possession as it is not supported by the manifest weight of the evidence, and the trial court erred by not granting the Rule 29 directed verdict of acquittal."

{¶37} Both assignments urge us to conclude that the four possession charges should not have gone to the jury and that each of the four counts are against the manifest weight of the evidence. We disagree.

{¶38} A manifest weight review requires us to review the evidence and determine whether this is an exceptional case in which it is patently apparent that the jury lost its

way. *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). The reversal of a jury's verdict on manifest weight grounds requires a unanimous concurrence of all three judges. *Id.*

> The * * * weight of the evidence addresses the evidence's effect of inducing belief. * * * In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? * * * [A]lthough there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. * * * 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' * * *.

*State v. Wilson*, 2007-Ohio-2202, ¶ 25.

{¶39} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "A jury is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Ellis,* 2013-Ohio-1184, ¶ 18 (8th Dist.), citing *Iler v. Wright,* 2002-Ohio-4279, ¶ 25 (8th Dist.).

{¶40} As stated, Appellant was convicted of four drug possession charges in violation of R.C. 2925.11(A), which states in part: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." This is the common element of each of the charges, and the aspect challenged on appeal.

{¶41} Appellant claims there was no evidence showing he knew about the drugs or had dominion or control over the substances found in his mother's home. He contends the circumstantial evidence linking him to the residence was not enough to connect him to the drugs to satisfy the definition of possession.

{¶42} He relies on the statutory definition of possession, which states: "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶43} Appellant contends that constructive possession of drugs requires evidence demonstrating either actual knowledge of the object's presence or proof that he was conscious or aware the drugs were located there. Appellant acknowledges that both

Case No. 23 MA 0117

dominion and control and one's awareness of the item's presence may be established via circumstantial evidence.

**{¶44}** However, Appellant claims there was no evidence showing he was present at his mother's house that day, the days before, or even the weeks before the date the drugs were found. He claims the evidence demonstrates he was last at his mother's home more than 40 days before the search. He urges us to conclude that his receiving mail there was insufficient to demonstrate any link to the drugs.

**{¶45}** A person can be in possession of an object through immediate physical possession or constructive possession, which involves dominion and control over an object. *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus.

**{¶46}** The state must show the defendant was "conscious" of the object's presence, and the "fact that property is located within premises under one's control does not, of itself, constitute constructive possession." *Hankerson*, 70 Ohio St.2d at 91. "Otherwise, a conviction could be based upon drugs placed by another." *State v. Devaughn*, 2020-Ohio-651, ¶ 32 (1st Dist.), citing *Hankerson*.

**{¶47}** Here, upon reviewing the evidence as a whole, it supports the jury's verdict. The state demonstrated via testimony and exhibits that Appellant had access to his mother's residence and had constructive possession of the drugs contained in her home. The fact that Appellant had his recent mail going to this house and had his vehicle registrations listing this address as his home are circumstantial evidence that he was living there or at least frequenting his mother's home at the time.

**{¶48}** Moreover, Appellant's act of directing the informants to the Cameron Avenue home so he could obtain the "work" or crack cocaine shows he had knowledge of the drugs located there. Once at that location, Appellant freely entered the home via one door and exited through another. He then returned to the garage with the "work" and completed the transaction. This transaction shows he not only had knowledge of the illegal drugs located there, but also that he was able to assert dominion and control over them.

**{¶49}** Appellant's arguments about the length of time between the drug buys and the search, as well as about the powder cocaine versus crack cocaine distinctions, were before the jury for it to consider. (Trial Tr. 646-650.) The jury evidently did not believe these arguments or Appellant's and his mother's testimony.

**{¶50}** Because this court cannot disagree with the factfinder's resolution of the evidence and testimony, we must conclude the verdicts are not against the manifest weight of the evidence. Thus, Appellant's first and second assigned errors lack merit.

Other Acts Evidence

**{¶51}** Appellant's third and final assignment of error asserts:

"The trial court erred as a matter of law and to the prejudice of Appellant by permitting Appellee to introduce impermissible prior bad acts evidence by the incorrect application of Ohio Evid.R. 404(B)."

**{¶52}** Appellant claims the trial court abused its discretion and materially prejudiced him by allowing the evidence that he trafficked drugs in the months of October and November to show the drugs found at his mother's home in the month of December were linked to him. He claims his convictions were introduced to show his bad character, and as such, unfair prejudice resulted and an abuse of discretion finding is warranted.

**{¶53}** Trial courts have broad discretion to allow other-acts evidence that is admissible under Evid.R. 404(B). *State v. Graham*, 2020-Ohio-6700, *cert. denied,* 142 S.Ct. 147; *State v. Williams*, 2012-Ohio-5695, ¶ 17. Consequently, we review these decisions for an abuse of discretion. An abuse of discretion reflects the trial court's attitude is unreasonable, arbitrary, or unconscionable. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**{¶54}** When considering other acts evidence, trial courts should make three determinations. First, it should determine if the evidence is relevant and second, whether the evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). Finally, the court must decide whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Williams*, *supra*, at ¶ 20; Evid.R. 403(B).

**{¶55}** Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence."  Evid.R. 401.  All relevant evidence is generally admissible, and evidence which is not relevant is not admissible.  Evid.R. 402.

**{¶56}**  Evid.R. 404(A) states in part that other acts evidence is not permissible to show that a defendant acted in conformity with one's prior bad conduct.  However, evidence of this nature "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Evid.R. 404(B)(2).

**{¶57}**  And Evid.R. 403(B) states:  "Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

**{¶58}**  Here, the state filed its notice of intent to use evidence about Appellant's other crimes, i.e., drug trafficking, indicating the testimony and exhibits would demonstrate Appellant's knowledge that the drugs were located in his mother's home.

**{¶59}**  We find no abuse of discretion.  As the trial court found, the evidence was relevant and was essential to show Appellant knew about the drugs located there and that he had exercised dominion and control over them.

**{¶60}**  While this evidence was prejudicial, the probative value was not outweighed by a danger of unfair prejudice.  It was relevant and necessary to demonstrate Appellant's knowledge.  *See State v. Ash,* 2018-Ohio-1139, ¶ 58-59 (7th Dist.).

**{¶61}**  Furthermore, the Ohio Supreme Court has held that evidence of other acts is admissible if it proves a specific element of the crime charged or if the evidence is "so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged."  *State v. Roe*, 41 Ohio St.3d 18, 23 (1990), citing *State v. Wilkinson*, 64 Ohio St.2d 308, 317 (1980), quoting *United States v. Turner*, 423 F.2d 481, 483-484; *State v. Smith*, 49 Ohio St.3d 137, 139-140, (1990).

**{¶62}**  Based on the foregoing, the trial court did not abuse its discretion in permitting the challenged evidence.

## Conclusion

**{¶63}**  Appellant's assignments of error lack merit, and the trial court's judgment is affirmed.

Case No. 23 MA 0117

Waite, J., concurs.

Dickey, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**