[Cite as *State v. E.T.*, 2025-Ohio-4456.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

E.T.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0093**

---

Application for Reopening

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Denied.

---

*Atty. Lynn Maro,* Mahoning County Prosecutor, *Atty. Kristie M. Weibling,* Assistant Mahoning County Prosecutor, for Plaintiff-Appellee and

*Atty. Victoria Ferry*, Assistant Public Defender, for Defendant-Appellant.

Dated: September 23, 2025

**PER CURIAM.**

{¶1} Appellant, E.T. seeks to reopen his direct criminal appeal pursuant to App.R. 26(B). Appellee, the State of Ohio, opposes. For the following reasons, the application is denied.

{¶2} Appellant was charged with multiple offenses in two separate juvenile complaints. Appellant entered pleas of admission in both cases, which included a plea of admission to one count of improper discharge of a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), a second-degree felony, with a five-year firearm specification under R.C. 2941.146(A). E.T. likewise entered a plea of admission to escape, a second-degree felony in violation of R.C. 2921.34, and assault, a fifth-degree felony in violation of R.C. 2903.13.

{¶3} The state agreed to move to dismiss the second count of improper discharge of a firearm into a habitation and the attendant five-year specification. Appellant agreed he would be considered a serious youthful offender under R.C. 2152.11(C). The parties agreed to a jointly recommended sentence under both the juvenile and adult dispositions. *State v. E.T.*, 2025-Ohio-1558, ¶ 9 (7th Dist.).

{¶4} The trial court accepted Appellant's plea of admission and found him to be a delinquent child. The court accepted the plea agreement and recommendations contained in it. The court found it had discretion to impose and suspend an adult sentence pursuant to R.C. 2152.11(A)(2) (the child used or brandished a firearm during the act charged), and R.C. 2152.11(D)(2)(a) (act would be a first-degree felony committed while youth was 16 or 17 years old). It deemed Appellant a serious youthful offender.

{¶5} The court found in part that the serious youthful offender sentence was agreed upon by the parties and Appellant committed an offense that would be a first-degree felony if committed by an adult. The court stated, "this Court sentences the Subject Child to a Prison Term at the Ohio Department of Rehabilitation and Correction for institutionalization in a secure facility up to a 13 year prison term . . . on a First Degree Felony and 5 year mandatory term for Firearm Specification, to be served prior to and consecutive to the underlying offense."

Case No. 24 MA 0093

{¶6} The court suspended the SYO sentence and held it in abeyance pending successful completion of the juvenile disposition. The court stated in part, "[i]f the SYO commitments are imposed, they shall run consecutive to one another." (February 10, 2021 Judgment.)

{¶7} More than three years later, the state moved to invoke the adult portion of the juvenile commitment, indicating there was reasonable cause to believe the delinquent child had engaged in conduct creating a substantial risk to the safety and security of the institution in which he was housed by committing acts in violation of the conditions of his supervision. (June 4, 2024 Motion.)

{¶8} The trial court granted the motion to invoke the adult portion of the dispositional sentence. It found Appellant met the criteria for a serious youthful offender, and the youth was delinquent as a serious youthful offender. The court lifted the stay of the adult sentence and invoked the adult portion of the sentence. It ordered Appellant to serve a total of 156 months (13 years) at the Ohio Department of Rehabilitation and Corrections and a five-year mandatory term for the firearm specification to be served prior to and consecutive to the underlying term. The court ordered the adult prison terms contained in the serious youthful offender agreement to run consecutive. The court also stated Appellant was subject to post-release control supervision for five years upon his release from prison. (September 26, 2024 Judgment.)

{¶9} On appeal, Appellant challenged the imposition of consecutive sentences and the sentencing court's failure to state the number of days Appellant served in juvenile detention in its judgment.

{¶10} We affirmed Appellant's sentence and found that res judicata applied and precluded us from reviewing his SYO sentence since it was appealable in a direct appeal from the delinquency adjudication. We also concluded the sentence was not reviewable because it was a jointly recommended sentence. R.C. 2953.08(D)(1). However, we reversed and remanded for the trial court to state the number of days Appellant served under the juvenile portion of his sentence in compliance with R.C. 2152.14(F).

<u>Appellant's Proposed Assignment of Error</u>

**{¶11}** Appellant identifies one proposed assignment of error, which he believes his appellate counsel should have raised in his direct appeal. Appellant's proposed assignment of error contends:

"The Mahoning County Juvenile Court abused its discretion when it invoked the adult portion of E.T.'s dispositional sentence without clear and convincing evidence that he was unlikely to be rehabilitated within the court's jurisdiction."

**{¶12}** A criminal defendant may apply for reopening of his direct appeal based on a claim of ineffective assistance of appellate counsel by raising an assignment of error (or an argument in support of an assignment of error) that previously was not considered on the merits (or that was considered on an incomplete record) because of appellate counsel's allegedly deficient representation. App.R. 26(B)(1) and (B)(2)(c).

**{¶13}** "An application for reopening shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). Appellant's burden per App.R. 26(B) is to show there is a genuine issue as to whether he was deprived of the effective assistance of appellate counsel; an appellant is not required to conclusively establish ineffective assistance of appellate counsel. *State v. Leyh*, 2022-Ohio-292. Thus, when addressing an application to reopen, we consider the two-part test for ineffective assistance of counsel upon considering whether there is a genuine issue as to whether counsel's performance was deficient and resulted in prejudice. *State v. Tenace*, 2006-Ohio-2987, ¶ 5, applying *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If there is no genuine issue regarding whether counsel's performance was deficient, then there is no need to review for prejudice and vice versa. *Id.*

**{¶14}** In evaluating whether appellate counsel was deficient, our review is highly deferential to counsel's decisions because there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *State v. Bradley*, 42 Ohio St.3d 136, 142-143 (1989) (there are "countless ways to provide effective assistance in any given case"), citing *Strickland*, 466 U.S. at 689. Courts should not second-guess an attorney's strategic decisions. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

**{¶15}** Regarding the prejudice prong, a lawyer's errors must be so serious that there is a reasonable probability the result of the proceedings would have been different. *Id.* A finding of prejudice from defective representation justifies reversal only if the results were unreliable or the proceeding was fundamentally unfair due to counsel's performance. *Id.* citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

**{¶16}** Moreover, in this context, we must be cognizant that appellate counsel has wide discretion to choose the errors to be raised on appeal and focus on the arguments counsel perceived as the strongest. *Tenace*, 2006-Ohio-2987, at ¶ 7. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal" to avoid diluting the force of stronger arguments. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983).

**{¶17}** A juvenile court that imposes an SYO disposition may invoke the stayed adult sentence when the delinquent minor commits specified acts, which demonstrate the juvenile disposition has been unsuccessful in rehabilitating him. *State v. D.H.*, 2009-Ohio-9, ¶ 2, citing R.C. 2152.14.

**{¶18}** Appellant contends the court erred by finding R.C. 2152.14(E)(1)(c) was satisfied by clear and convincing evidence. He appears to challenge the manifest weight of the evidence in support of the court's determination.

> The . . . weight of the evidence addresses the evidence's effect of inducing belief. . . . In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? . . . [A]lthough there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. . . . 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.'

*State v. Wilson*, 2007-Ohio-2202, ¶ 25.

**{¶19}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The factfinder "is free to believe all, some, or none of the

testimony of each witness appearing before it." *State v. Ellis,* 2013-Ohio-1184, ¶ 18 (8th Dist.), citing *Iler v. Wright,* 2002-Ohio-4279, ¶ 25 (8th Dist.).

**{¶20}** When conducting a manifest weight review, we are required to "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

**{¶21}** R.C. 2152.14(E)(1) requires the juvenile court to find all of the following by clear and convincing evidence before it is authorized to invoke the adult sentence:

> (a) The person is serving the juvenile portion of a serious youthful offender dispositional sentence.
>
> (b) The person is at least fourteen years of age and has been admitted to a department of youth services facility, or criminal charges are pending against the person.
>
> (c) The person engaged in the conduct or acts charged under division (A), (B), or (C) of this section, and the person's conduct demonstrates that the person is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction.

The conduct referred to in Section 2152.14(E)(1)(c) includes "[t]he person has engaged in conduct that creates a substantial risk to the safety or security of the institution, the community, or the victim." R.C. 2152.14(A)(2)(b); *In re D.J.*, 2018-Ohio-569, ¶ 8 (9th Dist.).

**{¶22}** Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶23} Appellant contends he demonstrated he was capable of being rehabilitated from February 2024 through September of 2024. He claims during this time period, he achieved the highest level of behavior, level four. Appellant acknowledges he had behavior issues at the beginning of his detention. However, toward the end of his juvenile detention, Appellant contends he was regularly attending classes and earning all A's. Thus, he claims the trial court erred by invoking the adult sentence. He argues he demonstrated he was capable of improving and he was amenable to the youth-specific treatment.

{¶24} Our review of the motion to revoke the transcript from September 6, 2024 reveals the following. The state presented testimony of Erik Roncone. He is the deputy superintendent of the Cuyahoga Hills Juvenile Correctional Department of Youth Services Facility. He supervises the facility and manages security. Appellant was in this facility for about two years. During that time, Appellant was found to have "coordinated an assault of a staff member for the benefit of the Heartless Felons [gang]." While Appellant was housed at Cuyahoga Hills, he was involved in 157 conduct behavioral rule violations. Examples of these types of incidents include violent behavior, refusals to attend school, refusal to participate in programming. Roncone said Appellant was an "underboss" before he became an HNIC ["Head Ni**a in Charge"] in the Heartless Felons gang.

{¶25} Roncone explained how he met with serious youthful offenders, including Appellant, monthly to review their behavior. Roncone would identify and explain what behavior could lead to the adult sentence being invoked. Roncone also reviewed positive aspects and treatment plans. The gang intervention specialist also met with Appellant. (September 6, 2024 Tr. 7-13.)

{¶26} Chris Freeman also testified for the state. Freeman was the interim superintendent overseeing the Indian River Correctional Facility while Appellant was there. Freeman learned Appellant was being transferred there, and at the same time, the transferring facility recommended his SYO be invoked. The prosecution was not yet involved at that time. Appellant was relocated to Indian River based on his misconduct at Cuyahoga Hills.

{¶27} Freeman said Appellant's transfer to Indian River gave him the opportunity to "reset . . . get back on track," and try to complete the treatment and programming to

rehabilitate. However, he was involved with two incidents within the first 15 days of his arrival, which Freeman described as assaults. (September 6, 2024 Tr. 41-50.)

{¶28} Ryan Smith also testified for the state. He is the bureau chief of behavioral health services for the Ohio Department of Youth Services. He generated the report detailing the hours of programming and clinical treatment Appellant was provided. Appellant received approximately 250 to 260 clinical treatment hours. Smith did not feel the treatment offered was successful at rehabilitating E.T. (September 6, 2024 Tr. 61-71.)

{¶29} William Stout also testified for the prosecution. He is the bureau chief of security. He identified videos depicting two different assaults by Appellant. One showed Appellant kicking and punching another youth in the upper body and head area and stomping on one of the victim's heads. Stout said he "vetted" 85 incidents involving Appellant and 35 of them were found to involve disruptive behavior, assaults on staff or other youth, and fighting. Stout described Appellant's behavior as violent and a "serious disruption of our facility" based on the level of violence making the environment unsafe for other youths. (September 6, 2024 Tr. 84-88; 120-121; 130-131; State's Ex. A & B.)

{¶30} Appellant testified on his own behalf. He was asked about fighting in the facility. He said he was fighting due to the peers he was surrounded by and because of the facility. Appellant said he fought because he was seeing others do the same thing. He stated he was the victim of two assaults and he retaliated. Appellant said he was only fighting to fit in, and he denied being in a gang. Appellant also denied damaging a tablet, and he explained he fought with the person who accused him of breaking it. Appellant also explained how his behavior has improved. He said he is at a better behavior level and is working toward his relapse prevention plan and anger management. He also testified he is earning high grades in his coursework and was going to graduate soon. (September 6, 2024 Tr. 139-151.)

{¶31} Contrary to Appellant's contentions, we conclude there was ample evidence on which the trial court could rely to conclude his conduct demonstrated he was unlikely to be rehabilitated during the remainder of the juvenile jurisdiction.

{¶32} When conducting a manifest weight review, we are required to "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility

of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340, (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340; *In re D.J.*, 2018-Ohio-569, ¶ 10-12 (9th Dist.).

**{¶33}** As the state points out, it presented the testimony of the superintendents from two different detention facilities. Each testified about Appellant's time at each facility. The first explained how Appellant had numerous violations including violent assaults on staff and other youth. He described the continued opportunities for Appellant's rehabilitation at that facility. The second superintendent described Appellant as destroying property, fighting, and assaulting staff. Moreover, each testified Appellant had a leadership role in a gang and he approved acts of violence against staff and other students. The chief of behavioral health services for the Department of Youth Services testified Appellant received nearly 500 hours of clinical treatment and programming. Further, the state presented testimony that Appellant was advised his continued violations would result in the invocation of his adult sentence.

**{¶34}** On the other hand, Appellant blamed his peers and the facility for his poor behavior choices. Moreover, Appellant's improved behavior, on which he now relies, corresponds with the state's filing of its motion to invoke the adult sentence, i.e., June of 2024.

**{¶35}** Because we cannot disagree with the factfinder's resolution of the evidence and testimony, we must conclude Appellant's proposed assigned error fails to demonstrate his appellate counsel erred. *See State v. Miller*, 2024-Ohio-4520, ¶ 50 (7th Dist.). Appellant does not demonstrate his appellate counsel was deficient or that Appellant was prejudiced as a result of the alleged deficiency. Accordingly, this argument does not demonstrate there is a "genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5).

{¶36} Appellant's proposed assignment of error does not demonstrate reopening is warranted.  The application is denied.


**JUDGE CAROL ANN ROBB**

**JUDGE MARK A. HANNI**

**JUDGE  KATELYN DICKEY**

<u>**NOTICE TO COUNSEL**</u>

**This document constitutes a final judgment entry.**